STACY, C. J., and WINBORNE, J., dissent.
CLARKSON, J., dissenting.
The city of Greensboro has adopted a zoning ordinance which is now in force, the pertinent provisions of which are as follows:
"Section 13. Set Back Building Lines.
"(a) Except as specified in sections 13 and 17, no part of any building or structure shall be within 25 feet of any street line in any residence district."
"Section 17. Projection and Encroachments in Yards and Courts.
"(f) The set back and yard requirements of this ordinance shall not apply to any necessary retaining wall, or to any fence or wall which is less than five feet high and less than 60 per cent solid. Nothing herein shall prevent the construction of a rear line fence or wall to a height not exceeding six feet, except that where the rear of any corner lot abuts any lot facing on a street which is a side street with reference to said corner lot, any fence built on the rear lot line shall not be in excess of five feet in height and shall be less than 60 per cent solid."
The petitioner, who is the owner of a corner lot at the intersection of South College Park Drive and Mayflower Drive in said city, began the *Page 53 
erection of a line fence or wall, the height of which exceeded the limitations set in said ordinance. After the wall had been completed except for stuccoing thereof, the city building inspector issued his order to Dr. Parker, calling attention to the fact that said wall violated section 17 (f) of the zoning ordinance and directing him to remove the violation within seven days. The petitioner appealed to the board of adjustment. On the hearing of said appeal by the board of adjustment the order of the building inspector was affirmed. On application of the petitioner, a writ of certiorari was issued and on the return thereof the cause was duly heard.
The court below found the facts, including the following:
"5. The petitioner Dr. H. R. Parker is the owner of a lot located in a residence A district of the city of Greensboro as such a district is defined in the zoning ordinance. The lot is situated at the southeast corner of the intersection of South College Park Drive and Mayflower Drive. It fronts about 62 feet on South College Park Drive and extends southwardly some 150 to 160 feet along Mayflower Drive to a private alleyway which runs in an eastwardly direction from Mayflower Drive. Certain other lots south of the petitioner's lot and south of the alley front on Mayflower Drive. On the petitioner's lot is situated a dwelling house in which the petitioner and his wife reside.
"6. The petitioner's lot is considerably above the level of the abutting streets, the highest part of the lot being approximately 21.6 feet above the level of South College Park Drive and approximately 15.1 feet above the level of Mayflower Drive. The lot slopes from the highest part thereof toward South College Park Drive on the north and toward Mayflower Drive on the west.
"7. Between October 5, 1937, and October 12, 1937, the petitioner built a wall around the rear of his lot.
"8. The wall is a solid brick wall, eight inches thick, except that it is 21 inches thick at the base. The height of the wall is as follows:
"a. The portion of the wall which connects the house with the east wall: approximately seven feet above the natural level.
"b. The east wall: approximately 6.5 feet above the natural level.
"c. The south, or rear, wall: approximately 6.5 feet above the level at the southeast corner of the lot, increasing along approximately a 2.64 per cent grade, to nine feet above the natural level at the southwest corner of the lot.
"d. The west wall: 14.3 feet above the sidewalk at the southwest corner of the lot, increasing along approximately a 8.3 per cent grade to 16.9 feet above the sidewalk at the northwest corner of the wall.
"e. The portion of the wall which connects the house with the west wall: 16.9 feet above the sidewalk at the northwest corner, decreasing to 9.5 feet above the natural level at the point of junction with the house. *Page 54 
"Along the sides of the lot the wall extends from the rear of the lot approximately 30 feet toward the front of the lot and then on each side turns toward and joins the house near the rear thereof.
"9. That the wall described in finding of fact No. 8 of this judgment is contrary to and in violation of the city ordinances of the city of Greensboro as set out in paragraph two hereof."
The court thereupon adjudged that said ordinances are valid and that said wall upon the premises of the petitioner is in direct violation of the same; and ordered the petitioner to tear down said wall or make it comply with the ordinances above set out. The petitioner excepted and appealed.
The petitioner's exception No. 2 is directed to the alleged error of the court in finding that Harry Sabel, one of the protestants, acquired title to the property abutting thereon and occupied by the petitioner subsequent to the passage of the ordinances hereinbefore referred to and before the erection of the wall hereinbefore described and that various other property owners in the immediate vicinity purchased said properties both prior and subsequent to the passage of said ordinances. This finding of fact is immaterial and has no substantial bearing upon the merits of this controversy. Exception thereto is not of sufficient merit to warrant a disturbance of the judgment below.
Petitioner's third exception is to the signing of the judgment set out in the record. The facts found by the court below are fully sufficient to sustain the judgment. The judgment was in accordance with the facts found, to which no exception was entered, and must be sustained, unless there is merit in the petitioner's only other exception.
This brings us to petitioner's exception No. 1, which is the meat of the controversy and presents the contention upon which the petitioner must and does rely. This exception is to the refusal of the court below to make the following finding, to wit: "To the extent that the zoning ordinance of the city of Greensboro prohibits the construction of the petitioner's wall, it bears no substantial relation to the public health, safety, morals, or general welfare. To such extent the ordinance is an arbitrary and unreasonable restriction upon the petitioner's property rights, deprives the petitioner of his property without compensation and without due process of law, and is in violation of the fundamental law of North Carolina and section 1 of the 14th Amendment to the Constitution of the United States." *Page 55 
It appears from this exception that the petitioner does not challenge the constitutionality of the zoning ordinances of the city of Greensboro as a whole. The validity of comprehensive zoning ordinances has been recognized by the Supreme Court of the United States and held not violative of the provisions of the Federal Constitution. Euclid v. Ambler Realty Co.,272 U.S. 365, 71 L.Ed., 303, 54 A.L.R., 1016; Nectow v. Cambridge,277 U.S. 183, 72 L.Ed., 842; Zahn v. Board of Public Works,274 U.S. 325, 71 L.Ed., 1074.
Zoning ordinances adopted under authority of our statute, C. S., 2776 (r), have been recognized and enforced by this Court. Harden v. Raleigh,192 N.C. 395; Little v. Raleigh, 195 N.C. 793; Elizabeth City v.Aydlett, 201 N.C. 602; In re Broughton Estate, 210 N.C. 62.
The courts will not invalidate zoning ordinances duly adopted by a municipality unless it clearly appears that in the adoption of such ordinances the action of the city officials "has no foundation in reason and is a mere arbitrary or irrational exercise of power having no substantial relation to the public health, the public morals, the public safety or the public welfare in its proper sense." Euclid v. Ambler RealtyCo., supra; Nectow v. Cambridge, supra.
When the most that can be said against such ordinances is that whether it was an unreasonable, arbitrary or unequal exercise of power is fairly debatable, the courts will not interfere. In such circumstances the settled rule seems to be that the court will not substitute its judgment for that of the legislative body charged with the primary duty and responsibility of determining whether its action is in the interest of the public health, safety, morals, or general welfare. Euclid v. Ambler Realty Co., supra;Radice v. New York, 264 U.S. 292, 68 L.Ed., 690; Hadacheck v. Sebastian,239 U.S. 394, 60 L.Ed., 348, Ann. Cas. 1917-B, 927; Thos. Cusack Co. v.Chicago, 242 U.S. 526, 61 L.Ed., 472, L.R.A. 1918-A, 136, Ann. Cas. 1917-C, 594; Rast v. Van Deman and L. Co., 240 U.S. 342, 60 L.Ed., 679, L.R.A. 1917-A, 421, Ann. Cas. 1917-B, 455; Price v. Illinois,238 U.S. 446, 59 L.Ed., 1400; Zahn v. Board of Public Works, supra.Harden v. Raleigh, supra, in which the Court quotes with approval fromRosenthal v. Goldsboro, 149 N.C. 128, as follows: "It may now be considered as established with us that our courts will always be most reluctant to interfere with these municipal governments in the exercise of discretionary powers conferred upon them for the public weal and will never do so unless their action should be so clearly unreasonable as to amount to an oppressive and a manifest abuse of their discretion. This position is, we think, supported by the better reason and is in accord with the decided weight of authority." Parks v. Commissioners, 186 N.C. 490; Lee v.Waynesville, 184 N.C. 568; S. v. Vanhook, 182 N.C. 831; Dula v. SchoolTrustees, 177 N.C. 426; Rollins v. Winston-Salem, 176 N.C. 411. *Page 56 
It is declared in the ordinances that the provisions thereof constitute the minimum requirements for the promotion of public health, safety and general welfare of the city. This is presumed to be correct and the burden rested upon the petitioner to show that the pertinent part of the ordinance in fact bears no substantial relation to the public health, safety, morals or general welfare. In declining to make the finding requested by the petitioner and in sustaining the validity of the ordinance the court below, by inference at least, found that the petitioner had failed to carry the burden.
The petitioner complains that the ordinance is an arbitrary and unreasonable restriction upon the petitioner's property rights. That he, due to the particular circumstances of his case, may suffer hardship and inconvenience by an enforcement of the ordinance is not sufficient ground for invalidating it. State v. Christopher, 317 Mo., 1179. The fact that the ordinance is harsh and seriously depreciates the value of complainant's property is not enough to establish its invalidity. American Woods ProductsCo. v. Minneapolis, 21 F.2d 440; Hadacheck v. Sebastian, supra. There is no serious difference of opinion in respect of the validity of laws and regulations fixing the heights of buildings within reasonable limits, the character of materials and methods of construction, and the adjoining area which must be left open in order to minimize the danger of fire or collapse, the evils of overcrowding and the like, and excluding from residential sections offensive trades, industries and structures likely to create nuisances. Euclid v. Ambler Realty Co., supra. When such restrictions are made it may develop that not only offensive or dangerous industries or structures will be excluded, but those which are neither offensive nor dangerous will share the same fate. But this is no more than happens in respect to practice-forbidding laws, which the courts have upheld, although drawn in general terms so as to include individual cases that may turn out to be innocuous in themselves. Hebe Co. v. Shaw,248 U.S. 297, 63 L.Ed., 255; Pierce Oil Co. v. Hope, 248 U.S. 498,63 L.Ed., 381; Euclid v. Ambler Realty Co., supra.
The inclusion of a reasonable margin to insure effective enforcement will not put upon a law otherwise valid the stamp of invalidity. Such laws may also find their justification in the fact that in some fields the bad fades into the good by such insensible degrees that the two are not capable of being readily distinguished and separated in terms of legislation. In the light of these considerations, we are not prepared to say that the end in view was not sufficient to justify the general rule of the ordinance, although some structures of an innocent character might fall within the prescribed class. It cannot be said that the ordinance in this respect "passes the bounds of reason and assumes the character of a merely arbitrary fiat." Purety Extract Tonic Co. v. Lynch, 226 U.S. 192,57 L.Ed., 184. *Page 57 
Each person holds his property with the right to use the same in such manner as will not interfere with the rights of others, or the public interest or requirement. It is held in subordination to the rights of society. He may not do with it as he pleases any more than he may act in accordance with his personal desires. The interests of society justify restraints upon individual conduct and also upon the use to which the property may be devoted. The provisions of the Constitution are not intended to so protect the individual in the use of his property as to enable him to use it to the detriment of the public. When the uses to which the individual puts his property conflict with the interest of society the right of the individual is subordinated to the general welfare and incidental damage to the property resulting from governmental activities or laws passed in the promotion of the public welfare is not considered a taking of the property for which compensation must be made.
The present motorized age has created much more rapid and congested traffic on the public streets of cities, greatly increasing the hazard of traffic for pedestrians and the users of vehicles alike. This in turn demands and requires legislation much more restrictive of individual rights than has heretofore been known to the law. The safety of the public now requires open and unobstructed street crossings and intersections. Large and congested urban areas increase fire hazards, requiring regulations which would be oppressive in rural sections or small villages; and while esthetic considerations are by no means controlling, it is not inappropriate to give some weight to them in determining the reasonableness of the law under consideration.
A consideration of the evidence in this case, and particularly of the photographs offered in evidence, makes it appear that the users of automobiles entering the street from the alley at the rear of the petitioner's property would cross the sidewalk of Mayflower Drive from behind a solid wall more than fifteen feet high. It cannot be said that this would not increase the hazard to pedestrians on Mayflower Drive, as well as to vehicular travel on the street. To some extent, at least, the wall, being more than 16 feet high at the point nearest Southern College Park Drive, obstructs the view of those who approach the Southern College Park Drive intersection. The wall encloses the rear portion of petitioner's house and is high enough to conceal the larger portion of the rear end of the house. It is reasonable to assume that in case of fire this wall would materially hamper the fire department in extinguishing the fire on the petitioner's property or on adjoining property, and in the prevention of a spread of such fire. Certainly we cannot say as a matter of law that these considerations are not sufficient to support the wisdom of the legislation and the validity of the ordinance. *Page 58 
Upon the record here we find no warrant for saying that the ordinance is unconstitutional as applied to the facts in the present case, or that it "passes the bounds of reason and assumes the character of a merely arbitrary fiat," having no substantial relation to the public safety and public welfare of the community.
It appears from the record in this cause that a considerable portion of the wall built by the petitioner is in fact a retaining wall. As the ordinance expressly excepts any necessary retaining wall so much of the wall as extends from the street line to the natural level of petitioner's lot is not prohibited. In the interpretation and enforcement of the judgment below it should be understood that the same relates only to that portion of the wall which is above the natural level of petitioner's lot. The petitioner has the right to remove so much of the wall as now constructed as will bring it within the terms of the ordinance, and as thus reduced in height, maintain the same, if he is so advised.
Affirmed.
STACY, C. J., and WINBORNE, J., dissent.