ROBERSON'S BEVERAGES, INC., A CORPORATION *v.* THE CITY OF NEW BERN, A MUNICIPAL CORPORATION, AND WILLIAM S. POOLE, THE BUILDING INSPECTOR OF THE CITY OF NEW BERN

No. 693SC519

(Filed 17 December 1969)

**1. Appeal and Error § 4—  theory of trial in lower court**

The theory on which a case was tried and judgment rendered in the superior court must be the theory of the case on appeal.

**2. Counties § 5; Municipal Corporations § 30—  zoning ordinance — presumption of validity — burden of showing invalidity**

The presumption is that a zoning ordinance is valid and a constitutional exercise of the police power, with the burden to show otherwise on the property owner who asserts that it is invalid.

**3. Counties § 5; Municipal Corporations § 30—  zoning ordinance — validity — evidence that property made less valuable**

Evidence that a zoning ordinance has made property less valuable is an insufficient ground, standing alone, for invalidating it.

**4. Municipal Corporations § 31—  judicial review of zoning ordinance**

When question of whether a zoning ordinance was an unreasonable, arbitrary or unequal exercise of power is fairly debatable, the courts

may not substitute their judgment for that of the legislative body as to the wisdom of the ordinance.

**5. Municipal Corporations § 30— zoning ordinance — validity — depriving owner of beneficial use of property**

A zoning ordinance is invalid if it has the effect of completely depriving an owner of the beneficial use of his property by precluding all practical uses or the only use to which it is reasonably adapted.

**6. Municipal Corporations § 30— validity of zoning ordinance — whether confiscatory — burden of proof**

In an action to restrain a municipality from enforcing a portion of a zoning ordinance which changed the zoning classification of plaintiff's property from business or commercial to office or institutional on the ground that it is unreasonable and confiscatory, plaintiff cannot prevail merely upon a showing that the property in question could be more profitably and efficiently used for business or commercial purposes, but plaintiff must establish that the property could not reasonably be adapted to any use permissible under the challenged zoning regulation, and that that fact rendered the property valueless or virtually so.

**7. Municipal Corporations § 30— validity of zoning ordinance — whether confiscatory — sufficiency of evidence**

In this action to restrain a municipality from enforcing a portion of a zoning ordinance which changed the zoning classification of plaintiff's property from business or commercial to office or institutional, plaintiff's evidence *is held* insufficient to support the trial court's findings and conclusion that the ordinance as it relates to plaintiff's property is invalid as confiscatory, where plaintiff's evidence tends only to show that the property would be more valuable in the market place under a business or commercial zoning classification, there is no evidence that plaintiff's building has no reasonable value for any of the broad variety of uses permitted under the office and institutional classification, there is no evidence of the cost of removing the improvements in relation to the value of the land without the improvements, and plaintiff can continue to use the property, as it has for the past nine years, for a storage warehouse as a permitted nonconforming use, or can sell the property for that purpose.

APPEAL by defendant from *Cowper, J.,* May 1969 Civil Session of CRAVEN County Superior Court.

This action was brought by the plaintiff to restrain the City of New Bern from enforcing a zoning ordinance as to certain of the plaintiff's property on the alleged ground that the ordinance as it relates to the subject property is unreasonable, confiscatory and illegal.

The following facts are not in dispute: In 1944 the plaintiff purchased 3.32 acres of land in the City of New Bern. In 1946 and 1947 a bottling company building was constructed on the property and the plaintiff conducted a bottling operation thereon until approxi-

mately 1960. From that time until the present the buildings and premises have been used as a warehouse for the storage and distribution of soft drinks manufactured elsewhere by the plaintiff. In 1953 the City of New Bern adopted the first zoning ordinance which affected plaintiff's property and under that ordinance the property was zoned for business or commercial use. Additional improvements at considerable cost were made to the property by the plaintiff before and after the ordinance was passed. On 5 March 1968, the City repealed that ordinance and adopted a new zoning ordinance under ·which a portion of plaintiff's property was zoned for residential use and a portion was zoned for office or institutional use. The portion zoned for office or institutional use is the property on which the improvements are located. It has a frontage on Trent Boulevard of approximately 175 feet, a rear frontage on Elmwood Drive of approximately 225 feet and a depth of 430 feet. The improvements consist of a steel and masonry two-story main building containing a lobby, office, bottling room and large inside storage and work space, with steel-roofed outside storage sheds of about 8,000 square feet, fencing and paving.

Plaintiff objected to the rezoning of its property through the ordinance enacted 5 March 1968 and after exhausting its administrative remedies filed this action contending that the ordinance is invalid insofar as it purports to change the zoning classification of that portion of its property on which the improvements are located from a business or commercial classification to an office or institutional classification. The parties waived a jury trial and the court heard the evidence and found facts including the following:

"13. That during the fall of 1967 and prior to the adoption or notice of hearing to adopt the present zoning ordinance hereinabove referred to, the plaintiff advertised its said property for sale as commercial property with local realtors and caused the same to be publicly advertised and offered for sale as business or commercial property. That the plaintiff received offers of substantial considerations from prospective purchasers but only as commercial or business property, as zoned by the 1953 Ordinance. That as 'office and institutional' property as classified by said ordinance and as restricted by the same, the plaintiff has totally been unable to entertain any sale for the same at any price, although it has made diligent effort to sell the same as 'office and institutional property.'

14. That said property as commercial or business property has a reasonable market value of $128,000; that the plaintiff

has invested in the purchase and improvements made to said property the sum of at least $140,000.00.

*          *          *

16. That said building was designed and constructed for industrial or commercial usage and the same cannot be practically adapted to office or institutional use; to convert said property to residential usage or development would necessitate the demolition of the building, which would be extremely expensive, and not more than three or four residential lots could be developed from said property unless a roadway is constructed in accordance with the City ordinances and regulations through said property from Trent Boulevard to Elmwood Drive; that such development would produce only a small number of small lots, the value of which would probably not exceed the cost of the road construction and the demolition of said building.

17. That there are located within three blocks of the plaintiff's property on Trent Boulevard various other business establishments, including a supermarket, a small shopping center and a motel; said property is adjoined by three residences, two of which have a fair market value of less than eleven thousand dollars; most of the other residences in the immediate vicinity of said property are of modest value; that Trent Boulevard is a wide main-travelled thoroughfare, being approximately the fifth heaviest travelled thoroughfare outside of the central business district in the City of New Bern. Nearly all, if not all, of the houses situate in the immediate vicinity of the subject property were built either prior to the zoning of said property by the City of New Bern in 1953, or subsequent to 1953 during which time the same was zoned 'Commercial'.

18. That the improvements made to said property by the plaintiff were made in good faith both during the time prior to 1953 when said property was not zoned and subsequent to 1953 and up to March 1968 in specific reliance upon said property being zoned business or commercial by the defendant City of New Bern.

19. That the subject property was appraised in the last county revaluation for ad valorem taxes as 'Commercial Property' at a value of $101,766.00, and is being taxed by Craven County and by the defendant City of New Bern as 'commercial property' at the value of $50,883.00, one-half of the appraised value."

Based on its findings the court concluded: (1) That the property in question has no practical use nor any reasonable value, and

is not suitable for office and institutional use or residential use under applicable building codes and zoning regulations. (2) That the ordinance as it relates to the subject property tends to destroy all its practical use and value and tends to render it practically value-less and to deprive the owner of its beneficial use. (3) As it relates to the subject property the ordinance is unreasonable and confisca-tory and therefore illegal.

The court thereupon declared the ordinance invalid, unenforce-able and void as it relates to the property in question and enjoined defendants from enforcing it with respect thereto. Defendants ap-pealed assigning error.

*Barden, Stith, McCotter & Sugg by L. A. Stith and David S. Henderson for plaintiff appellee.*

*Ward & Ward by A. D. Ward for defendant appellants.*

GRAHAM, J.

[1]   The plaintiff contends, for the first time in this court, that the zoning ordinance was invalid because the City failed to posi-tively establish that a mistake had been made in the original ordi-nance adopted in 1953, or that the character of the neighborhood had changed, or that public safety, health, morals and general wel-fare required the change. These contentions differ substantially from the theory of plaintiff's case as it was tried below. There, plaintiff conceded the validity of the ordinance except insofar as it affected the portion of its property changed from "business or commercial" classification to "office or institutional" classification, and as to that portion plaintiff contended the ordinance was invalid as unreason-able and confiscatory. The plaintiff may not now change the theory on which this cause was tried and judgment rendered in the trial below. *State v. Brooks,* 275 N.C. 175, 166 S.E. 2d 70; *Board of Education v. Waynesville,* 242 N.C. 558, 89 S.E. 2d 239; 1 Strong, N.C. Index 2d, Appeal and Error, § 4. Conceding *arguendo* that the burden of showing the reasons for a change in zoning might under certain circumstances rest upon a municipality, the theory of plaintiff's pleadings and evidence in this case has never placed that matter in issue. Certainly the City cannot now be called upon to come forward with evidence which was unnecessary for it to present at the trial.

We therefore consider only the question raised by defendants' exceptions and assignments of error, which is: Was the evidence presented sufficient to support a judgment declaring the zoning or-

dinance invalid, unenforceable and void as it relates to that portion of plaintiff's property about which complaint is made?

**[2-4]**   The presumption is that a zoning ordinance is valid and a constitutional exercise of the police power. *Durham County v. Addison*, 262 N.C. 280, 136 S.E. 2d 600; *Kinney v. Sutton*, 230 N.C. 404, 53 S.E. 2d 306. The burden to show otherwise rests upon a property owner who asserts that it is invalid. *Raleigh v. Morand*, 247 N.C. 363, 100 S.E. 2d 870; *Durham County v. Addison, supra*. Evidence that an ordinance has made property less valuable is an insufficient ground, standing alone, for invalidating it. *Zopfi v. City of Wilmington*, 273 N.C. 430, 160 S.E. 2d 325; *In re Appeal of Parker*, 214 N.C. 51, 197 S.E. 706. "When the most that can be said against such ordinances is that whether it was an unreasonable, arbitrary or unequal exercise of power is fairly debatable, the courts will not interfere." *In re Appeal of Parker, supra*, at p. 55. Under such circumstances the courts may not substitute their judgment for that of the legislative body as to the wisdom of the legislation. *Zopfi v. City of Wilmington, supra; Schloss v. Jamison*, 262 N.C. 108, 136 S.E. 2d 691.

**[5]**   It is well settled, however, that zoning cannot render private property completely valueless. "[I]f the application of a zoning ordinance has the effect of completely depriving an owner of the beneficial use of his property by precluding all practical uses or the only use to which it is reasonably adapted, the ordinance is invalid." *Helms v. Charlotte*, 255 N.C. 647, 653, 122 S.E. 2d 817. 8 McQuillin, Municipal Corporations, § 25.45.

**[6]**   Applying the above principles, we hold that the plaintiff could not prevail merely upon a showing that the property in question could be more profitably and efficiently used for business or commercial use. What plaintiff had to establish was that the property could not reasonably be adapted to any use permissible under the challenged zoning regulation; and that that fact rendered the property valueless or virtually so.

Under the challenged zoning ordinance, the office and institutional classification, though prohibiting commercial and industrial uses, nevertheless permits a broad variety of other uses. Section 5.6 of the Ordinance provides as follows:

"The O & I Office and Institutional District is established as the district in which the principal use of land is for residences, general business offices and professional offices, and institutional type uses such as hospitals, medical offices and clinics. . . .

A.  PERMITTED USES

a.  Accessory uses clearly incidental to a permitted use and which will not create a nuisance or hazard.

b.  Any use permitted in RA-6 Residential District.

c.  Tourist homes and boarding houses.

d.  Agencies rendering specialized services, such as real estate, insurance, advertising, brokerage, stenographic, telephone answering, and similar services, not involving retail trade with the general public nor maintenance of a stock of goods for sale.

e.  Drug Stores.

f.  Offices rendering professional services, such as legal, medical, dental, engineering, architectural and similar institutions.

g.  Public and private colleges, universities, business colleges, music conservatories, dancing schools, day nurseries and kindergartens and similar services.

h.  Offices and headquarters of civic, charitable, political, fraternal, social and religious organizations.

i.  Funeral homes, undertaking establishments, and mortuaries.

j.  A commercial parking lot.

k.  Signs, advertising goods or services sold on the premises not to exceed one (1) square foot of area per lineal foot of lot abutting on a walk, drive or public way, or facing a private access way if there is no frontage on a public street.

l.  Signs required by governmental agency or law to promote the health, safety and general welfare of the residence."

[7]  The burden of proving that the property in question could not be adapted for any of the permissible uses set forth above was on the plaintiff. In our opinion the findings of the court below do not support its conclusions respecting the effect of the zoning regulations on plaintiff's property, nor do we feel that the evidence offered would permit findings sufficient to support such conclusion.

Except for certain stipulations and admissions the only evidence offered was the testimony of two witnesses for the plaintiff. The realtor who had been attempting to sell the property testified and described the property and the surrounding area from memory.

When asked his opinion as to whether the property could be applied to institutional use, he replied:

"From a realtor's standpoint, the highest and best use for this piece of property would be commercial, but the City in community planning does not always necessitate the highest and best use. I think I can safely say with the experience I have had in trying to merchandise this piece of property, that an offer of somewhere around seventy thousand, sixty-five thousand to seventy-five thousand, is as high as has been entertained by any of the prospects I have shown it to. That is, for the classification commercial. I have not had anyone make me an offer when I was handling it for institutional or office use. An institutional use was contemplated by the Elks, the Elks Club, but I was not at their meeting and do not know what was the cause of them rejecting the idea.

I think it would be expensive to adapt it to the use of institutional or for office use, probably more than would be justified in completely rebuilding."

As to the possible use of the subject property for residential use the witness stated:

"In order to make the property usable for residential purposes, the building would have to be torn down, completely demolished. I am not qualified to give an opinion as to the expense of that. With respect to what would have to be done to remove the present building, there are several tons of steel supporting a large metal roof and a large area of concrete. I believe you have someone here who can tell the exact dimensions. I think it is six inches in the bottling area and four inches in the storage area, and it would require quite a demolition crew to tear it up. I don't think there's enough salvage material in it to get it done for free, but I am not qualified to tell you what it would cost."

On cross-examination the realtor engaged in various calculations concerning the number of lots that could be obtained for residential purposes and testified that the zoning classification would permit multi-housing units. The only other witness was the president of the defendant corporation. Nothing in his testimony indicated that it would be impractical to adapt the property to a use permissible under a classification of office or institutional.

Taking the plaintiff's evidence in its most favorable light we find that all it shows is that the property in question would be more

valuable in the market place under a business or commercial zoning classification. That is not an unusual· consequence of zoning, for the nature of such regulations is to deflate some property values while inflating others. But as is recognized by authorities heretofore cited, depreciation in value is not the test used in seeking to determine the validity of a zoning ordinance. Nor could it be, for such a test would necessarily result in the wholesale exemption of lots and tracts of land from any type of zoning regulation and would render ineffective the efforts of a municipality to orderly regulate the use of property for the common health, safety and welfare of its citizens. It is unfortunate that a property owner sometimes, as in this case, suffers hardship. But as stated by Barnhill, J., (later C.J.) in *In re Appeal of Parker, supra,* at p. 57:

> "Each person holds his property with the right to use the same in such manner as will not interfere with the rights of others, or the public interest or requirement. It is held in subordination to the rights of society. He may not do with it as he pleases any more than he may act in accordance with his personal desires. The interests of society justify restraints upon individual conduct and also upon the use to which the property may be devoted. The provisions of the Constitution are not intended to so protect the individual in the use of his property as to enable him to use it to the detriment of the public. When the uses to which the individual puts his property conflict with the interest of society the right of the individual is subordinated to the general welfare and incidental damage to the property resulting from governmental activities or laws passed in the promotion of the public welfare is not considered a taking of the property for which compensation must be made."

The plaintiff contends that it is faced with a situation similar to that of the landowner in the case of *Helms v. Charlotte, supra.* We do not agree. That case involved two lots with a combined useable area of less than 5,000 square feet. The ordinance required a minimum of 7,500 square feet for a residence. The dimensions and terrain of the lots were such that even if a residence could be legally constructed thereon, it would be "odd shaped" and would require a foundation and roof variation for each room. The court remanded the case for findings on the question: "Is it practical to use the lots for residential purposes and do they have any reasonable value for residential use under zoning regulations, the building code and other pertinent circumstances?" In the instant case there is nothing in the record before us to indicate that the plaintiff's building which contains an office, lobby and substantial inside space has no reasonable

value for one or perhaps several of the uses permitted under the present zoning classification. Nor · is there evidence as to the cost of removing the improvements in relation to the value of the land without the improvements. A vacant lot of the size here involved, located in an area such as has been described would certainly not be without value as a potential site for office or institutional construction.

Furthermore, in the *Helms* case the lot had not been previously used for business and therefore it had no value for a nonconforming use. Here, under the ordinance in question, the plaintiff may continue to use its property in the same manner it has used it for the past nine years as a permitted nonconforming use. It could be sold for that purpose. The ordinance specifically provides that the lawful use of a building and land existing at the time of the passage of the ordinance shall not be affected unless discontinued for a continuous period of more than 180 days. The property has been valuable for use as a storage warehouse for nine years. There is no evidence to indicate that its value for that purpose has been substantially affected.

Reversed.

CAMPBELL and PARKER, JJ., concur.