CLARENCE M. ALLRED, JUNE ALLRED, J. LAWRENCE APPLE, ELLA APPLE, LAWRENCE E. BACH, UNITA BACH, PHILIP BLANK, JR., MARY ALICE BLANK, GLENN W. BOWERS, FLORA LEE BOWERS, BENJAMIN E. BRITT, JOY BRITT, ROBERT S. BRYAN, GERALDINE BRYAN, JOHN A. CARBONE, JEAN CARBONE, BRUCE K. CHESTER, MARGARET CHESTER, ELLIS COWLING, BETSY COWLING, LAWRENCE E. CRABTREE, VIRGINIA CRABTREE, RALPH E. FORREST, LULA D. FORREST, L. C. HANSBROUGH, FREDA HANSBROUGH, WARREN HANSON, HARRIETT HANSON, SOLOMON P. HERSH, ROSALIE HERSH, Z. ZIMMERMAN HUGUS, NANCY HUGUS, JOHN E. JOHNSON, LOIS JOHNSON, MAX LEVINE, PHYLLIS LEVINE, CARL LOWENDICK, MARY LOWENDICK, JAMES B. LYLE, SHIRLEY LYLE, HERBERT MARTIN, MARY MARTIN, EDMUND MENDELL, LOIS MENDELL, LATHAM L. MILLER, FRANCES MILLER, FLOYD MORGAN, ANN MORGAN, WILLIAM D. PAGE, PEGGY PAGE, LEE PERSON, HELEN PERSON, NORMAN PLINER, ROSALYN PLINER, THOMAS H. REGAN, NANCY REGAN, JAMES R. REID, MARJORIE REID, ROBERT T. ROSS, MARTHA ROSS, SAMUEL C. SCHLITZKUS, BOBBIE M. SCHLITZKUS, BERNIE SILVERMAN, FAYE SILVERMAN, W. B. SLOOP, VONNIE SMITH, SYLVIA SMITH, JOHN W. STONE, BETSY STONE, ROBERT WAHL, GERALDINE WAHL, LEWIS P. WATSON, MIRANDA WATSON, J. C. WILLIAMSON, JR., SALLIE JOE WILLIAMSON, CHARLES C. WOOTEN, AND RUTH WOOTEN, ON BEHALF OF THEMSELVES AND OTHER NEARBY PROP-

ERTY OWNERS, PLAINTIFFS v. THE CITY OF RALEIGH, NORTH CAR-
OLINA, TRAVIS H. TOMLINSON, MAYOR AND MEMBER OF THE CITY
COUNCIL OF THE CITY OF RALEIGH, NORTH CAROLINA, AND GEORGE B.
CHERRY, SEBY B. JONES, WILLIAM M. LAW, CLARENCE E.
LIGHTNER, ALTON L. STRICKLAND, AND WILLIAM H. WORTH,
MEMBERS OF THE CITY COUNCIL OF RALEIGH, NORTH CAROLINA, AND BLUE
RIDGE GARDENS, INC., DEFENDANTS AND SEBY B. JONES, MAYOR OF
THE CITY OF RALEIGH, NORTH CAROLINA, AND JESSE O. SANDERSON,
THOMAS W. BRADSHAW, JR., AND ROBERT W. SHOFFNER, MEM-
BERS OF THE CITY COUNCIL OF THE CITY OF RALEIGH, NORTH CAROLINA,
ADDITIONAL DEFENDANTS

No. 7010SC191

(Filed 6 May 1970)

**1. Municipal Corporations § 30—   power to zone — limitations**

Through the provisions of Art. 14, G.S. Ch. 160, cities and towns of this
State have been delegated the authority to zone property within their
boundaries and to restrict to specified purposes the uses of private prop-
erty within each zone, such authority being limited by provisions of the
enabling statute and by constitutional provisions forbidding arbitrary and
unduly discriminatory interference with the rights of property owners.

**2. Municipal Corporations § 30—   zoning — comprehensive plan**

No extrinsic written plan, such as a master plan based upon a compre-
hensive study, is required to have zoning in accordance with a "compre-
hensive plan," and the ordinance itself may show that the zoning is com-
prehensive in nature.

**3. Municipal Corporations § 30—   zoning — comprehensive plan**

A comprehensive plan is simply a plan which zones an entire city or
town, as opposed to a limited portion thereof arbitrarily selected for zon-
ing, in a manner which is calculated to achieve the statutory purposes
set forth in G.S. 160-174.

**4. Municipal Corporations § 30—   amendment to zoning ordinance —
comprehensive plan**

When a zoning ordinance is changed by amendment, it does not neces-
sarily mean that the zoning plan ceases to be comprehensive.

**5. Municipal Corporations § 30—   amendment to zoning ordinance —
comprehensive plan**

If an amendment to a zoning ordinance is within the legislative power
of the city, the area rezoned becomes a legitimate part of the original
comprehensive zoning plan of the city.

**6. Municipal Corporations § 30—   spot zoning**

Spot zoning arises where a small area, usually a single lot or a few
lots, surrounded by other property of similar nature, is placed arbitrarily
in a different use zone from that to which the surrounding property is
made subject.

**7. Municipal Corporations § 30—   spot zoning — reclassification — type
of use unchanged — change in density of residents**

The fact that the use permitted in a rezoned area has not been changed
from residential but only permits a more dense concentration of residents

in the area must be given weight in determining whether the reclassification constitutes spot zoning.

**8. Municipal Corporations § 30— spot zoning — findings by trial court**

In this action seeking to declare invalid an ordinance which changed the zoning classification of 9.26 acres from single family residential to a residential classification permitting apartments and other non-single family residence uses, the ordinance *is held* not to constitute "spot zoning," where the trial court found upon competent evidence that the rezoned property is separated from plaintiffs' property by a limited access four-lane highway lying on the east side of the property, that the north side of the property fronts on a collector street which is designated as a loop thoroughfare in the city thoroughfare plan, that property lying to the south is zoned and is being developed as a planned unit development with condominiums, that south of such area are areas zoned for apartments, a shopping center, and office and institutional use, that the rezoned property is bounded on the west by the city limits, that the change in zoning is primarily of density only and does not constitute a change in zoning character, and that a school has just been built in the area.

**9. Municipal Corporations § 30— spot zoning — size of area**

While the size of an area is not solely determinative of whether an ordinance constitutes spot zoning, it is a factor for the court to consider.

**10. Municipal Corporations § 30— municipal zoning policy — statements by city councilmen**

Statements by individual city councilmen, in passing on several zoning applications, that they objected to proposed zoning changes because the property involved was located on the beltline but not near an interchange did not establish an inflexible rule that is binding on the council when considering future zoning applications.

**11. Municipal Corporations § 30— validity of zoning ordinance — consideration of specific use of property — violation of city council resolution**

In this action seeking to declare invalid an ordinance changing the zoning classification of certain property, the evidence does not compel a finding that a specific plan for use of the property in question was relied upon by the city council in violation of a council resolution stating that it would not rely on specific use or plan proposals in its determination of zoning matters, although such a plan was presented to the council by the applicant for the zoning change.

**12. Municipal Corporations § 30— zoning ordinance — validity — evidence of long-range thoroughfare plan**

In this action seeking to declare invalid an ordinance changing the zoning classification of certain property, the trial court did not err in the admission of defendant's evidence of a long-range plan for construction of streets and thoroughfares in the area and in making findings of fact based on this evidence, plaintiffs having themselves introduced in evidence the thoroughfare map, and findings as to such plans being relevant to the design of zoning regulations to prevent and relieve traffic congestion.

**13. Municipal Corporations § 30— zoning ordinance — validity — testimony that street has small amount of traffic**

In this action seeking to declare invalid an ordinance which rezoned certain property, the trial court did not err in the exclusion of testimony by one plaintiff that there was a small amount of traffic on a street in the area in question, since if traffic is in fact lighter in plaintiff's neighborhood than in other areas of the city, they have even less cause to complain that it may be increased as a result of the rezoning.

**14. Municipal Corporations § 30— zoning ordinance — validity — exclusion of purported zoning criteria**

In this action seeking to declare invalid a municipal ordinance which rezoned certain property, the trial court did not err in excluding a paper writing purporting to establish zoning criteria for the municipality, where plaintiffs' witness in attempting to identify the document testified that he did not know its origin but understood that it was a list of areas for discussion between the city planning commission and city council, meeting some time ago, and that the document was prepared after the property in question had been rezoned.

**15. Municipal Corporations §§ 8, 30— validity of zoning ordinance — motives of city officials**

In this action seeking to invalidate a municipal ordinance which rezoned certain property, the trial court did not err in the denial of plaintiffs' motion to compel the mayor and three city councilmen to answer questions asked them on adverse examination which constituted an inquiry into their motives in passing the ordinance, since neither the motives of the members of a municipal legislative body nor the influences under which they act can be shown to nullify an ordinance duly passed in legal form within the scope of their powers.

**16. Municipal Corporations § 31— zoning — discretion of legislative body — appellate review**

How a city or town shall be zoned or rezoned and how various properties shall be classified or reclassified rests with the municipal legislative body, and its judgment is presumed to be reasonable and valid and beyond judicial interference unless shown to be arbitrary, unreasonable or capricious.

BROCK, J., dissents.

APPEAL by plaintiffs from *Bailey, J.,* 19 October 1969 Regular Civil Session of WAKE County Superior Court.

The defendant Blue Ridge Gardens, Inc. (Blue Ridge) is the owner of approximately 9.26 acres of land located at the southwest quadrant of the intersection of the Raleigh "Beltline" and Glen Eden Drive in the City of Raleigh. At the time that Blue Ridge purchased this property, it was zoned R-4 (single family residential). Blue Ridge attempted unsuccessfully in 1965 to have the property rezoned for commercial usages. In 1967 an application was filed with the City seeking a change from R-4 to R-10. R-10 is also a residential classification but is less restrictive in that it permits apartment buildings and certain other non single-family residence usages. This proposed change was unanimously rejected by the Coun-

cil. On 16 December 1968 a second application for a change in zoning classification to R-10 was filed by Blue Ridge. The Raleigh Planning Commission considered plaintiffs' request and recommended that it be denied. However, on 3 March 1969, the City Council rejected the recommendation of the Planning Commission and unanimously adopted an ordinance allowing the requested change.

On 7 March 1969 this action for a declaratory judgment was instituted by various plaintiffs who own property and reside in the vicinity of the rezoned tract. They seek to have the ordinance declared invalid.

By consent the case was heard by the court without a jury. At the conclusion of all of the evidence the court rejected proposed findings of fact tendered by plaintiffs and entered findings proposed by defendants. Based upon these findings the court concluded: (1) The ordinance was validly adopted. (2) The City Council did not act arbitrarily or capriciously in enacting the ordinance but acted in good faith, reasonably and in accordance with the comprehensive zoning plan of the City of Raleigh. (3) The ordinance bears reasonable and substantial relation to the public safety, health, morals, comfort and general welfare and makes adequate provision for transportation without undue concentration of population. (4) The ordinance does not constitute spot zoning. In accordance with its findings and conclusions the court entered judgment declaring the rezoning ordinance valid. Plaintiffs appealed.

*John V. Hunter, III, for plaintiff appellants.*

*Donald L. Smith and Broxie J. Nelson by Broxie J. Nelson for defendant appellee, the City of Raleigh.*

*Bailey, Dixon, Wooten & McDonald by John N. Fountain, Ruffin Bailey and Wright T. Dixon, Jr., for defendant appellee, Blue Ridge Gardens, Inc.*

GRAHAM, J.

Plaintiffs' primary contention is that the evidence conclusively establishes that the ordinance in question is invalid on the grounds that it is inconsistent with the comprehensive zoning plan of the City of Raleigh.

[1] Through the provisions of Article 14 of Chapter 160 of the General Statutes, cities and towns of this State have been delegated the authority to zone property within their boundaries and to restrict to specified purposes the uses of private property within each zone. This authority is limited by the provisions of the enabling statute and also by constitutional provisions which forbid arbitrary

and unduly discriminatory interference with the rights of property owners. *Zopfi v. City of Wilmington,* 273 N.C. 430, 160 S.E. 2d 325; *Schloss v. Jamison,* 262 N.C. 108, 136 S.E. 2d 691; *In re Appeal of Parker,* 214 N.C. 51, 197 S.E. 706.

G.S. 160-174 provides:

"Such regulations shall be made in accordance with a comprehensive plan and designed to lessen congestion in the streets; to secure safety from fire, panic and other dangers; to promote health and the general welfare; to provide adequate light and air; to prevent the overcrowding of land; to avoid undue concentration of population; to facilitate the adequate provision of transportation, water, sewerage, schools, parks and other public requirements. Such regulations shall be made with reasonable consideration, among other things, as to the character of the district and its peculiar suitability for particular uses, and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout such municipality."

The Charter and the Code of the City of Raleigh also provide that all zoning regulations must be made in accordance with "a comprehensive plan." The enabling zoning legislation of at least forty-four states include a similar requirement or some slight variation of it. 1 Anderson, American Law of Zoning, § 5.02. Similar language is employed in Section 3 of the Standard State Zoning Enabling Act.

[2]   While courts have differed with respect to the definition of a "comprehensive plan," the majority have held that no extrinsic written plan, such as a master plan based upon a comprehensive study, is required. 8 McQuillan, Municipal Corporations, § 25.79, pp. 212, 213 and cases therein cited. The ordinance itself may show that the zoning is comprehensive in nature. *Ward v. Montgomery Tp.,* 28 N.J. 529, 147 A. 2d 248; *Cleaver v. Board of Adjustment,* 414 Pa. 367, 200 A. 2d 408; *Walus v. Millington,* 49 Misc. 2d 104, 266 N.Y.S. 2d 833. "A comprehensive zoning plan is a means by which the character of the community is to be preserved although devoting the land to its most-appropriate uses." *State ex rel. American Oil Co. v. Bessent,* 27 Wis. 2d 537, 135 N.W. 2d 317.

[3]   A comprehensive plan is simply a plan which zones an entire town or city, as opposed to a limited portion thereof arbitrarily selected for zoning, in a manner which is calculated to achieve the statutory purposes set forth in G.S. 160-174. See *Shuford v. Waynesville,* 214 N.C. 135, 198 S.E. 585.

[4]   The power to amend a comprehensive plan is granted by G.S. 160-176. When the zoning ordinance is changed by amendment it does not necessarily mean that the zoning plan ceases to be comprehensive. In commenting on such a contention the Pennsylvania Supreme Court aptly stated: "It is a matter of common sense and reality that a comprehensive plan is not like the law of the Medes and the Persians; it must be subject to reasonable change from time to time as conditions in an area or a township or a large neighborhood change." *Furniss v. Lower Merion Township,* 412 Pa. 404, 194 A. 2d 926.

[5]   The relevant inquiry is always whether the amending ordinance is beyond the legislative power of the city. If it is not, the area rezoned becomes a legitimate part of the original comprehensive zoning plan of the city. In *Walker v. Elkin,* 254 N.C. 85, 89, 118 S.E. 2d 1, it is stated:

"[T]he basic rule to determine the validity of an amending ordinance is the same rule used to determine the validity of the original ordinance. *Elizabeth City v. Aydlett,* 201 N.C. 602, 161 S.E. 78. The legislative body must act in good faith. It cannot act arbitrarily or capriciously. If the conditions existing at the time of the proposed change are such as would have originally justified the proposed action, the legislative body has the power to act."

Plaintiffs contend that the zoning ordinance in question was beyond the power of the city and in conflict with the comprehensive plan for the following reasons: (1) It constitutes "spot zoning" for the benefit of a single property owner and not for the general public benefit. (2) In enacting the ordinance the Council violated its previously announced policy with respect to standards to be followed in acting on rezoning applications.

[6]   In *Zopfi v. City of Wilmington, supra,* Lake, J., speaking for the court, stated as follows with respect to spot zoning:

"Spot zoning arises where a small area, usually a single lot or a few lots, surrounded by other property of similar nature, is placed arbitrarily in a different use zone from that to which the surrounding property is made subject. Where such small area is subjected to a more burdensome restriction than that applicable to the surrounding property of like kind, the weight of authority is that the owner of the property so subjected to discriminatory regulation, [sic] may successfully attack the validity of the ordinance. See: *Higbee v. Chicago, B. & Q. R. Co.,* 235 Wis. 91, 292 N.W. 320, 128 A.L.R. 734; *Marshall v. Salt*

*Lake City*, 105 Utah 111, 141 P. 2d 704, 149 A.L.R. 282. The rule denying the validity of spot zoning ordinances has also been applied where a small area previously in a residential zone has been removed, by an amending ordinance, from such zone and reclassified to permit business or commercial use over the objection of adjoining owners of residential property. 58 Am. Jur., Zoning, § 39; 101 C.J.S., Zoning § 91; Yokley, Zoning Law and Practice, § 8-3, 3rd ed."

[7]     The ordinance here challenged does not change the type of use permitted in the designated area but it does permit a more dense concentration of residents. We are not prepared to say, as some of the defendants contend, that spot zoning may occur only if the character of the use permitted in the affected territory is changed. However, the fact that the use permitted in the area has not been changed from residential must be given weight. In speaking to this point, the Maryland Supreme Court stated as follows in the case of *Hedin v. Bd. of Co. Commissioners*, 209 Md. 224, 120 A. 2d 663:

"Where the proposed change is, as here, from one residential use to another, and there is already a considerable amount of property either adjoining the subject property or in its immediate vicinity falling within the proposed classification and there is also a considerable amount of other property close by of a lower classification, the proposed reclassification is not 'spot zoning.'"

The trial judge made the following findings that are supported by competent evidence:

"(3)     That the Blue Ridge Gardens tract is separated from the plaintiffs' property by a limited access highway of four lanes with a dividing median, as well as additional right-of-way lying to the sides of the throughway, for a total right-of-way width of 260 feet; that this right-of-way is part of the Raleigh Beltline System which carries traffic for U.S. 1, 70, 64 and other highway routes and lies on the east side of the property; that the north side of the property fronts on Glen Eden Drive, at present a collector street and designated a loop thoroughfare in the thoroughfare plan adopted by the City of Raleigh. The property lying to the south is zoned and being developed as a planned unit development which provides for condominium ownership of apartment like structures. The property is bounded by the City Limits of the City of Raleigh on the west.

(4)     That prior to the meeting of the City Council of the City of Raleigh on the 3rd day of March, 1969, the Blue Ridge

Gardens tract was zoned R-4 (Residential); that all of the property abutting the 9.26 acres on the west side of the Raleigh Beltline was zoned R-4, except that the property lying immediately on the south, while zoned R-4, has been approved for Planned Unit Development, and construction thereof is partially complete.

\*      \*      \*

(9)   That Glen Eden Drive is presently an 80-foot right-of-way collector street connecting Ridge Road and Blue Ridge Road.

(10)   That the 1985 Thoroughfare Plan for the City of Raleigh designates the street, Glen Eden Drive, upon which this property fronts on the north, as a loop thoroughfare. That the connecting link of Glen Eden Drive with Glenwood Avenue is already constructed; that the additional links to the Dixie Trail Thoroughfare, with the Ebenezer Church Road, with U.S. 70 and the Jefferies School Road are as set out in the Raleigh Thoroughfare Plan.

(11)   That the change in zoning is that primarily of density only and does not constitute a change in zoning character — from residential to business, office or commercial.

(12)   That a school has just been built in the area.

(13)   That south of the Planned Unit Development, there are areas zoned R-10 — with apartments — a shopping center and areas zoned for office and institutional use.

(14)   That Raleigh is a growing City; that a tremendous interest has been put upon the development of apartments. If the City is to maintain its growth, there will have to be more apartments.

(15)   That the proposed location, based on studies of other cities is not contrary to good living, and in fact, it can enhance a neighborhood, if properly executed and properly maintained.

(16)   That the zoning at R-10 would make less restrictions and better use of the subject property."

[8, 9]   In our opinion the above findings negate plaintiffs' contention that the zoning here constitutes spot zoning. We further note that the 9.26 acres here involved forms a triangle-like area between a heavily traveled beltline system consisting of a right-of-way of 260 feet and a collector street with a right-of-way of 80 feet. (Compare the location of this area with that of the property involved in *Zopfi v. City of Wilmington, supra*). Also, the area here does not consist of a single lot or a few lots but covers 9.26 acres. While the

size of an area is seldom solely determinative of the question of whether an ordinance constitutes spot zoning, it is a factor that few courts are prone to overlook. See Note, Spot Zoning and The Comprehensive Plan, 10 Syracuse L. Rev. 303 (1959).

Plaintiffs counter by pointing to the fact that much of the area surrounding the rezoned property is quiet, orderly, and a "high-class" residential area. They quote at length from the case of *Euclid v. Ambler Co.*, 272 U.S. 365, 47 S. Ct. 114, 71 L. Ed. 303, where it was noted that apartment development within an area of detached residences may utterly destroy the residential character of the neighborhood and its desirability as a place for detached residences and may come very near to being a nuisance. That landmark case which first recognized municipal planning and regulation of land use as a valid exercise of the police power of the states was decided in 1926. Since that time more and more people have turned to apartments as permanent homes — many by choice. Few, if any, cities today enjoy the luxury of having enough land available to accommodate substantially all of their citizens in detached houses. Consequently, more land often has to be made available for apartments under existing zoning regulations. Many modern and luxurious apartment buildings tend to compliment the area where they are located. We are therefore not persuaded that conditions today are the same as those that prompted the dicta in the *Euclid* case almost half a century ago.

[10, 11]  Turning to plaintiffs' second contention, we fail to find that any violation of the City's announced policies respecting zoning has been established. It is true that while passing on several zoning applications in past years individual councilmen have noted as one of their objections to the requested changes that property involved was located on the beltline but not near an interchange. It is undisputed that the property here is not on an interchange. However, we do not regard such informal statements as establishing an inflexible rule that is binding on the Council when considering future zoning applications. Also, on 1 May 1967, the City Council adopted a resolution stating *inter alia* that except under certain circumstances that are not here applicable it would not rely upon specific use or plan proposals in its determination of zoning matters. A specific plan for the use of the property in question was presented to the Council by Blue Ridge. However, the evidence does not compel a finding that the plans were *relied upon* by the Council in making its determination.

[12]  Plaintiffs' third assignment of error is to the admission of evidence as to future plans for construction of streets and thoroughfares in the area and findings made by the court which are based on

this evidence. The evidence questioned is a long-range thoroughfare plan for the Raleigh urban area that was prepared in 1967 by a private engineering firm employed by the North Carolina State Highway Department and the City of Raleigh for that purpose. The period of the plan extends through 1985. This plan constitutes the background document for the City Thoroughfare Plan map which was offered in evidence by the plaintiffs as their Exhibit No. 18. Since plaintiffs themselves introduced the Thoroughfare Plan map they are in no position to complain that the document on which the map is based was thereafter admitted into evidence. Plaintiffs' Exhibit No. 18 is, in fact, page 65 of defendants' Exhibit No. 2, which is the thoroughfare plan objected to. Furthermore, we do not find that the court's findings respecting these plans are irrelevant. The plans are not speculative in nature but constitute plans for a thoroughfare system that are now actually being implemented. The matter of zoning is prospective because it in effect constitutes planning as to how a city or town will be developed in the future, and in designing zoning regulations to prevent and relieve traffic congestion it is important that streets and thoroughfares planned for an area be considered as well as those in existence. This assignment of error is overruled.

[13]     The trial court sustained a defense objection to a question asked one of the plaintiffs regarding the general volume of traffic on Glen Eden Drive. The witness would have answered that there was a small amount of traffic on Glen Eden. Plaintiffs assign the exclusion of this testimony as error. We do not see how they have been harmed by such a ruling. If the traffic is in fact lighter in their neighborhood than in other areas of the City they have even less cause to complain that it may be increased as a result of the rezoning.

[14]     Plaintiffs' Exhibits Nos. 20 and 21 are paper writings purporting to establish certain zoning criteria for the City of Raleigh. Exhibit 20 was admitted into evidence over defendants' objection. The court refused to admit Exhibit 21 and plaintiffs assign this as error. Plaintiffs attempted to identify the document through the testimony of a City planning technician who stated to the court: "I can't personally answer the origin of this. It is my understanding of this document would be that a list of areas for discussion between the Planning Commission and the Council, meeting some time ago." His testimony also indicated the document was prepared after the property in question had been rezoned. Under these circumstances the court properly refused to admit the document into evidence. Both documents appear to be nothing more than general notes set-

ting forth what someone (we know not who) regards as sound zoning practice. This assignment of error is overruled.

[15] Finally plaintiffs complain that the Mayor and three City Councilmen were not ordered to answer certain questions asked them on adverse examination. We do not decide the question raised regarding the right of plaintiffs to adversely examine these City officials in the first place. Suffice to say the questions which form the basis of plaintiffs' assignment of error constituted an inquiry into the motives of these elected officials. We find the following in 5 McQuillin, Municipal Corporations, § 16.90, p. 287:

"Except as they may be disclosed on the face of the act or are inferrible from its operation, the courts will not inquire into the motives of legislators in passing or doing an act, where the legislators possess the power to pass or do the act and where they exercise that power in a mode prescribed or authorized by the organic law. Therefore, neither the motives of the members of a municipal legislative body nor the influences under which they act can be shown to nullify an ordinance duly passed in legal form, within the scope of their powers. In such case the doctrine is that the legislators are responsible only to the people who elect them."

In our opinion the court properly denied plaintiffs' motion to compel answers to the questions propounded.

[16] This case has been well briefed and strenuously argued by counsel for plaintiffs. However, this court is bound by the well accepted principle that how a city or town shall be zoned or rezoned and how various properties shall be classified or reclassified rests with the municipal legislative body and its judgment is presumed to be reasonable and valid and beyond judicial interference unless shown to be arbitrary, unreasonable or capricious. The burden of establishing such arbitrariness is on the one asserting it. *Durham County v. Addison*, 262 N.C. 280, 136 S.E. 2d 600; *Raleigh v. Morand*, 247 N.C. 363, 100 S.E. 2d 870; *Beverages, Inc. v. City of New Bern*, 6 N.C. App. 632, 171 S.E. 2d 4. The court's findings, which are supported by competent evidence, support the conclusions made and judgment entered.

Affirmed.

BRITT, J., concurs.

BROCK, J., dissents.