FRANK V. SUMMERS, ELEANOR M. SUMMERS, GILBERT E. GALLE, PAMELA N. GALLE, PATRICIA G. SELBY LIVING TRUST, PETER M. DUGGAN, DR. LEE ANN McGINNIS, AND DR. MARYROSE TURNER, PLAINTIFFS v. CITY OF CHARLOTTE, NORTH CAROLINA, A MUNICIPAL CORPORATION, SOUTHPARK MALL LIMITED PARTNERSHIP, A NORTH CAROLINA LIMITED PARTNERSHIP, J.B. IVEY & COMPANY, A NORTH CAROLINA CORPORATION, T.W. SAMONDS, JR., THALHIMER BROTHERS, INCORPORATED, A VIRGINIA CORPORATION, MAY CENTERS ASSOCIATES CORPORATION, A MISSOURI CORPORATION, ROTUNDA BUILDING, L.L.C., A NORTH CAROLINA LIMITED LIABILITY CORPORATION, SEARS, ROEBUCK AND CO., A NEW YORK CORPORATION, BELK CHARLOTTE, INC., A NORTH CAROLINA CORPORATION, AND UNITED STATES STEEL AND CARNEGIE PENSION FUND, A PENNSYLVANIA NON-PROFIT CORPORATION, DEFENDANTS

FRANK V. SUMMERS, ELEANOR M. SUMMERS, GILBERT E. GALLE, PAMELA N. GALLE, PATRICIA G. SELBY LIVING TRUST, PETER M. DUGGAN, DR. LEE ANN McGINNIS AND DR. MARYROSE TURNER, PLAINTIFFS v. CITY OF CHARLOTTE, NORTH CAROLINA, A MUNICIPAL CORPORATION, SOUTHPARK MALL LIMITED PARTNERSHIP; A NORTH CAROLINA LIMITED PARTNERSHIP, J.B. IVEY & COMPANY, A NORTH CAROLINA CORPORATION; T.W. SAMONDS, JR.; THE MAY DEPARTMENT STORES COMPANY SUCCESSOR BY MERGER TO MAY CENTER ASSOCIATES CORPORATION; A MISSOURI CORPORATION, SEARS, ROEBUCK AND CO., A NEW YORK CORPORATION, BELK, INC., SUCCESSOR BY MERGER TO BELK CHARLOTTE, INC., A NORTH CAROLINA CORPORATION AND UNITED STATES STEEL AND CARNEGIE PENSION FUND, A PENNSYLVANIA NON-PROFIT CORPORATION, DEFENDANTS

No. COA01-748

(Filed 2 April 2002)

### 1. Zoning— conditional rezoning—legislative act

The trial court did not err in a rezoning case by granting summary judgment in favor of defendants based on its conclusion that a conditional rezoning which does not involve a subsequent permitting process constitutes a legislative rather than a quasi-judicial act, because: (1) the city's decision to adopt two ordinances rezoning the two pertinent parcels of land was a single procedure constituting legitimate conditional zoning and thus was a legislative act; and (2) the city's action was entirely consistent with 2000 N.C. Sess. Laws ch. 84, § 1(e), which grants it the power to engage in conditional zoning as a purely legislative process.

### 2. Zoning— rezoning ordinances—constitutionality—procedural due process—arbitrary and capricious standard—enabling statute

The trial court did not err by granting summary judgment in favor of defendants based on its conclusion that two rezoning

ordinances were consistent with constitutional and statutory restraints, because: (1) even assuming that plaintiffs have a vested right in the property, adequate procedural due process protection was afforded to them when various community meetings were held after due notice was given to surrounding property owners, the notes and minutes from those community meetings were forwarded to the council to review in making its decision, and the public was allowed to argue for or against the petition during the reserved time allowed by the council at the hearing on the two petitions for rezoning; (2) the council's decision was not arbitrary and capricious since the record shows the decision was based on and consistent with the various reports and recommendations and entered after fair and careful consideration; (3) plaintiffs have made no showing that the ordinances were unduly discriminatory; and (4) it is not necessary that a zoning ordinance accomplish all of the purposes specified in the enabling act so long as the legislative body of the city had reasonable ground upon which to conclude that one or more of those purposes would be accomplished or aided by the amending ordinance, and the council adopted the ordinances in due regard to N.C.G.S. § 160A-383.

Appeal by plaintiffs from order filed 2 February 2001 and from order and judgment filed 21 March 2001 by Judge Robert P. Johnston in Mecklenburg County Superior Court. Heard in the Court of Appeals 12 February 2002.

*Kenneth T. Davies for plaintiff-appellants.*

*Office of the City Attorney by Senior Assistant City Attorney Robert E. Hagemann, for defendant-appellee City of Charlotte.*

*Kennedy Covington Lobdell & Hickman, L.L.P., by Roy H. Michaux, Jr. and Samuel T. Reaves, for defendant-appellee SouthPark Mall.*

*Moore & Van Allen, PLLC, by Andrew S. O'Hara, for defendant-appellee United States Steel and Carnegie Pension Fund.*

*Assistant City Attorney Karen A. Sindelar for City of Durham, amicus curiae.*

*Mark C. Cramer for Real Estate and Building Industry Coalition, amicus curiae.*

GREENE, Judge.

Frank V. Summers, Eleanor M. Summers, Gilbert E. Galle, Pamela N. Galle, Patricia G. Selby Living Trust, Peter M. Duggan, Dr. Lee Ann McGinnis, and Dr. Maryrose Turner (collectively, Plaintiffs) appeal an order filed 2 February 2001 granting a motion to dismiss in favor of SouthPark Mall Limited Partnership, J.B. Ivey & Company, T.W. Samonds, Jr., Thalhimer Brothers, Incorporated, May Centers Associates Corporation, Rotunda Building, L.L.C., Sears, Roebuck and Co., Belk Charlotte, Inc., (collectively, SouthPark Defendants), and United States Steel and Carnegie Pension Fund (Pension Fund Defendant); the 2 February order further granted the City of Charlotte's (the City) partial summary judgment motion. Plaintiffs also appeal an order and judgment filed 21 March 2001 granting: summary judgment in favor of SouthPark Defendants,[1] except on the issue of Plaintiffs' standing; summary judgment in favor of Pension Fund Defendant; and summary judgment in favor of the City.

*Pension Fund Defendant*

On 9 November 1999, Pension Fund Defendant filed a rezoning application (Petition No. 2000-51) to have approximately 11.6 acres at the corner of Fairview Road and Assembly Street rezoned from an office-1 district to a Mixed Use Development Optional district (MUDD-O). Petition No. 2000-51 attached a site plan and sought approval for a mixed-use development consisting of office space, ground floor retail space, multi-family residential units, and a hotel. Martin R. Crampton, Jr. (Crampton), director of the Charlotte-Mecklenburg Planning Commission Staff (the Commission), testified his office supported Petition No. 2000-51 after the proposed office space was reduced from 458,000 square feet to 415,764 square feet. After reviewing Petition No. 2000-51 and its attachments, the Commission concluded that the proposed "mixed-use concept [was] consistent with the . . . Small Area Plan," but the "plan [did] not support an increase in office square footage on the site. Accepting the proposed retail, residential, and hotel components, the square footage of offices need[ed] to be reduced by approximately 42,000 square feet (to 415,764 square feet)" in order to be consistent with the SouthPark Small Area Plan (the Small Area Plan). The Charlotte Department of Transportation performed a detailed traffic study in connection with Petition No. 2000-51 and concluded "the develop-

---

1. We note Thalhimer Brothers, Incorporated and Rotunda Building, L.L.C. were not listed as defendants in the caption of the 21 March 2001 order and judgment.

ment proposed [would] not significantly affect traffic when compared to the development that could occur by existing zoning."

A community meeting was held on 5 September 2000, with approximately thirty people attending, to discuss Petition No. 2000-51. The attendees cited concerns regarding the floor area, building height, open space, traffic, and lighting. In response to comments from the 5 September meeting and other meetings, Pension Fund Defendant made several changes to its site plan, including addressing the design and orientation of site lighting.

### SouthPark Defendants

On 31 December 1999, SouthPark Defendants filed a petition (Petition No. 2000-52) to rezone SouthPark Mall Shopping Center (the SouthPark site), approximately 84 acres, from a business-1 shopping center district to a commercial center district. Attached to Petition No. 2000-52 were: a technical data sheet; a schematic site plan; a symphony park concept plan; perspective views of various development elements; a site traffic access and impact study; and development standards. On 27 March 2000, the Charlotte City Council (the Council) adopted the Small Area Plan which provided "a vision of what the SouthPark area could look like in the near future (5-10 years) and contains goals and recommendations for achieving that vision." The goals of the Small Area Plan included: creating a greater mixture of land uses, especially by incorporating more multi-family residential development; identifying and planning for future mass transit service in the SouthPark area; developing a multi-modal transportation system that emphasized pedestrian improvements and linkages to mass transit; developing a public gathering space and a network of green spaces; creating a safe and inviting pedestrian environment; ensuring the long-term viability of neighborhoods and business areas; maintaining a healthy, highly livable natural environment; and establishing ongoing communication linkages between neighborhood residents, businesses, the development community, and local government.

On 6 July 2000, the North Carolina General Assembly enacted Session Law 2000-84 permitting the City to engage in conditional zoning as a legislative process.[2] 2000 N.C. Sess. Laws ch. 84, § 1(e). A "conditional zoning district" is "a zoning district in which the devel-

---

2. There is no dispute that Session Law 2000-84 applies in this case. We do note, however, that Session Law 2000-84 only applies to conditional zoning petitions filed on or before 31 August 2001. 2000 N.C. Sess. Laws ch. 84, § 2.

opment and use of the property included in the district is subject to predetermined ordinance standards and the rules, regulations, and conditions imposed as part of the legislative decision creating the district and applying it to the particular property." 2000 N.C. Sess. Laws ch. 84, § 1(a).

Following the enactment of Session Law 2000-84, SouthPark Defendants filed amended Petition No. 2000-52 for the SouthPark site and surrounding areas, approximately 95.6 acres, to rezone the site from a business-1 shopping center district, office-1 district and office-2 district to a commercial center district. Included in the amended application was the property known as Dillard's. Consistent with the Small Area Plan, Petition No. 2000-52, as amended, indicated the land use of the SouthPark site would include: a shopping center mall; mixed-use development at the corner of Sharon Road and Morrison Boulevard; public open space at the corner of Morrison Boulevard and Barclay Downs Drive; a pedestrian-friendly environment; public parks; and a transit facility. In the package submitted to the City, SouthPark Defendants also included the permitted uses and proposed restrictions on the property.

The Commission reviewed Petition No. 2000-52 and according to Crampton, the rezoning would have a "major positive effect" on the land use policies of the City as a whole. With respect to the surrounding neighborhoods, the Commission received reports stating there would be "no significant effect" on traffic and storm water management "would be handled within the standards set by the City for storm water management." After reviewing Petition No. 2000-52, the Commission concluded the petition was "consistent with the recommendation of the SouthPark Small Area Plan for the redevelopment of SouthPark Mall to take the form of a 'town center.' "

On 30 August 2000, more than seventy people attended a community meeting held to discuss Petition No. 2000-52. Prior to this meeting, representatives of SouthPark Defendants had participated in approximately twenty community meetings in connection with Petition No. 2000-52. At the 30 August meeting, a representative of SouthPark Defendants provided an overview of the SouthPark Mall rezoning plan by explaining the details of the plan and its consistency with the Small Area Plan. The representative also provided details on the traffic study performed in connection with Petition No. 2000-52. A question and answer session followed in which the meeting attendants were able to ask questions and present their concerns about the rezoning plan.

*The City Ordinance*

On 18 September 2000, a public hearing was held before the Council on Petition Nos. 2000-51 and 2000-52. Prior to the hearing, proponents and opponents of both petitions submitted various written materials regarding the two petitions. With respect to Petition No. 2000-51, approximately thirteen people commented at the hearing expressing their opinions on whether the petition should be approved. There was extensive discussion on the planning and development concerning Petition No. 2000-51, especially relating to traffic and building size. A member of the Commission commented that Petition No. 2000-51 takes into account the Small Area Plan's design elements "in terms of pedestrian friendly design, streetscape amenities[,] . . . open space and a mixture of uses the South Plan was looking for," as well as reducing the number of trips made from the area by creating more internal trips. After receiving the public's comments on Petition No. 2000-51, the Council voted unanimously to close the public hearing and deferred its decision pending a recommendation from the zoning committee. With respect to Petition No. 2000-52, approximately fifteen people commented on the petition and expressed their views on whether that petition should be approved. SouthPark Defendants presented a notebook containing approximately 3,500 names of persons who supported Petition No. 2000-52. Concerns regarding Petition No. 2000-52 centered around public green space, neighborhood preservation, quality of life, and traffic.

On 18 October 2000, the Council approved Petition No. 2000-51 in Ordinance No. 1631-Z, rezoning approximately 11.6 acres from an office-1 district to MUDD-O, and Petition No. 2000-52 in Ordinance No. 1632-Z, rezoning 95.6 acres from an office-1, office-2 and business-1 shopping center district to a commercial center. In each ordinance, the Council specifically provided:

> The development and use of the property hereby rezoned shall be governed by the predetermined ordinance requirements applicable to such district category, the approved site plan for the district, and any additional approved rules, regulations, and conditions, all of which shall constitute the zoning regulations for the approved district and are binding on the property as an amendment to the regulations and to the Zoning Maps.

On 12 December 2000, Plaintiffs filed a complaint seeking a declaratory judgment to determine the validity of Ordinance Nos. 1631-Z and 1632-Z. In their complaint, Plaintiffs argued: Session Law

2000-84 violated the constitutional guarantee of separation of powers; the adoption of the two zoning ordinances violated Plaintiffs' substantive and procedural due process rights; the City violated its delegated authority; and there was no showing of changed circumstances justifying Petition Nos. 2000-51 and 2000-52. On 21 December 2000, Plaintiffs filed an amended complaint alleging the adoption of the two zoning ordinances constituted illegal and unlawful spot zoning.[3] On 22 December 2000, Pension Fund Defendant filed an answer and a motion to dismiss Plaintiffs' complaint based on Plaintiffs' failure to state a claim upon which relief could be granted and lack of standing. SouthPark Defendants filed an answer and a motion to dismiss on 3 January 2001. SouthPark Defendants alleged Plaintiffs lacked standing to assert the claims and Plaintiffs' complaint failed to state claims upon which relief could be granted. On 3 January 2001, the City filed its answer and motion to dismiss Plaintiffs' complaint for failure to state a claim upon which relief could be granted.

Pension Fund Defendant filed a motion on 19 January 2001, to dismiss Plaintiffs' first cause of action and procedural due process claims alleged in their second and third causes of action. Subsequently, the City filed a motion on 19 January 2001 for partial summary judgment on Plaintiffs' first cause of action and the procedural due process claims set forth in Plaintiffs' second and third causes of action. In an order filed 2 February 2001, the trial court determined that with respect to the City's motion for partial summary judgment, there were no issues of fact in dispute, and it granted the City's motion for partial summary judgment on the first cause of action and procedural due process claims in the second and third causes of action. With respect to the motions to dismiss by SouthPark Defendants and Pension Fund Defendant, the trial court granted the motions to dismiss Plaintiffs' first cause of action and the procedural due process claims in the second and third causes of action.

On 6 and 7 March 2001, SouthPark Defendants, the City, and Pension Fund Defendant filed motions for summary judgment on Plaintiffs' remaining claims. Plaintiffs filed a motion for summary judgment on 7 March 2001 seeking a declaration that the two ordinances were invalid, unlawful, and void. In an order filed 21 March 2001, the trial court granted: SouthPark Defendants' motion for summary judgment, "except for that portion of the motion which seeks

---

3. As Plaintiffs have presented no argument in their brief to this Court regarding either changed circumstances or illegal and unlawful spot zoning, their assignments of error relating to these issues are abandoned. *See* N.C.R. App. P. 28(a).

judgment upon the grounds that [Plaintiffs] lack standing"; Pension Fund Defendant's motion; and the City's motion. The trial court denied Plaintiffs' motion for summary judgment.

The issues are whether: (I) a conditional rezoning, which does not involve a subsequent permitting process, constitutes a legislative or a quasi-judicial act; and (II) the ordinances were consistent with constitutional and statutory restraints.

We first note that because Plaintiffs' causes of action were disposed of summarily, it is unclear what standard of review the trial court used in evaluating the Council's decisions. The standard of review utilized by the trial court, however, is immaterial as "an appellate court's obligation to review a superior court order for errors of law can be accomplished by addressing the dispositive issue(s) before the agency and the superior court without examining the scope of review utilized by the superior court." *Capital Outdoor, Inc. v. Guilford County Bd. of Adjust.*, 146 N.C. App. 388, 392, 552 S.E.2d 265, 268 (2001) (Greene, J., dissenting) (citations omitted), *reversed per curiam*, 355 N.C. 269, —— S.E.2d —— (2002) (reversing for reasons stated in the dissenting opinion).[4]

I

[1] Plaintiffs argue that because the Council engaged in conditional zoning, the rezoning was "quasi-judicial in nature, rather than legislative." We disagree.

Zoning is generally described as a legislative process. *Kerik v. Davidson County*, 145 N.C. App. 222, 228, 551 S.E.2d 186, 190 (2001). Conditional use zoning, as historically practiced, is a two-step process " 'with the rezoning decision meeting all of the statutory requirements for legislative decisions and the permit decision meeting all of the constitutional requirements for quasi-judicial decisions.' " *Village Creek Property Owners' Ass'n, Inc. v. Town of Edenton*, 135 N.C. App. 482, 487, 520 S.E.2d 793, 796 (1999) (citation omitted). More recently, however, some local governments have com-

---

4. Thus, it is not necessary for this Court to review appeals from a superior court's order entered after evaluating a board decision by employing the two-fold standard of review most recently used in *Howard v. City of Kinston*, 148 N.C. App. 238, 241, 558 S.E.2d 221, 224 (2002). *See Capital Outdoor, Inc.*, 146 N.C. App. at 392, 552 S.E.2d at 268 (Greene, J., dissenting) (not necessary to determine whether the trial court exercised and correctly applied the proper scope of review).

bined this two-step process into one proceeding, commonly referred to as conditional zoning. Under this procedure, the rezoning decision is made concurrent with approval of the site plan. This combined procedure or conditional zoning is entirely a legislative act. *Massey v. City of Charlotte*, 145 N.C. App. 345, 353, 355, 550 S.E.2d 838, 844, 845, *cert. denied*, 354 N.C. 219, 554 S.E.2d 342 (2001).

In this case, the City's decision to adopt Ordinance Nos. 1631-Z and 1632-Z rezoning the two parcels of land was a single procedure, constituting legitimate conditional zoning, and thus was a legislative act. Furthermore, we note the action of the City was entirely consistent with Session Law 2000-84, which grants it the power to engage in conditional zoning as a purely legislative process.[5] 2000 N.C. Sess. Laws ch. 84, § 1(e).

## II

**[2]** Plaintiffs argue adoption of the ordinances violated their procedural due process rights, was "unreasonable, arbitrary and capricious, and . . . violated N.C.G.S. [§] 160A-383." We disagree.

Local governments have been delegated the power to zone their territories and restrict them to specified purposes by the General Assembly. *Zopfi v. City of Wilmington*, 273 N.C. 430, 434, 160 S.E.2d 325, 330 (1968). This authority "is subject both to the . . . limitations imposed by the Constitution and to the limitations of the enabling statute." *Id.* Within those limitations, the enactment of zoning legislation "is a matter within the discretion of the legislative body of the city or town." *Id.*

## A

### *Procedural Due Process*

A city, engaging in a legislative act, is required to afford procedural due process to a party before that party's vested property rights are altered. *PNE AOA Media, L.L.C. v. Jackson County*, 146 N.C. App. 470, 481, 554 S.E.2d 657, 664 (2001). A vested right entitled to protection from legislation " 'must be something more than a *mere expectation* based upon an anticipated continuance of the existing law; it *must have become a title*, legal or equitable, *to the present or*

---

5. We note Plaintiffs assigned error to the trial court's dismissal of their claim that Session Law 2000-84 violated the constitutional protection of separation of powers. Plaintiffs, however, have presented no argument in their brief to this Court dealing with the constitutionality of Session Law 2000-84. Accordingly, this assignment of error is deemed abandoned. *See* N.C.R. App. P. 28(a).

*future enjoyment of property, a demand, or legal exemption from a demand by another.'* " *Armstrong v. Armstrong,* 322 N.C. 396, 402, 368 S.E.2d 595, 598 (1988) (citation omitted). "The fundamental premise of procedural due process protection is notice and the opportunity to be heard. Moreover, the opportunity to be heard must be 'at a meaningful time and in a meaningful manner.' " *Peace v. Employment Sec. Comm'n,* 349 N.C. 315, 322, 507 S.E.2d 272, 278 (1998) (citations omitted).

In this case, even assuming Plaintiffs have a vested right in the property, adequate procedural due process protection was afforded to them. There were various community meetings held after due notice was given to surrounding property owners. Also, the notes and minutes from those community meetings were forwarded to the Council to review in making its decision. At the hearing on the two petitions for rezoning, the public was allowed to argue for or against the petition during the reserved time allowed by the Council. Accordingly, the trial court did not err in dismissing Plaintiffs' procedural due process claims.[6]

B

*Arbitrary and Capricious*

The Constitution imposes limits on the legislative power to zone by forbidding arbitrary, capricious, and "unduly discriminatory interference with the rights of property owners." *Zopfi,* 273 N.C. at 434, 160 S.E.2d at 330. This standard is a very difficult standard to meet. *Teague v. Western Carolina Univ.,* 108 N.C. App. 689, 692, 424 S.E.2d 684, 686, *disc. review denied,* 333 N.C. 466, 427 S.E.2d 627 (1993). "A decision is arbitrary and capricious if it was 'patently in bad faith,' 'whimsical,' or if it lacked fair and careful consideration." *Id.* (citation omitted). In deciding whether a decision is arbitrary and capricious, "courts must apply the 'whole record' test." *Id.*

---

6. We note our statutes provide that before a city or town adopts or amends an ordinance, the city council is required to hold a public hearing and provide notice of the public hearing. N.C.G.S. § 160A-364 (1999); *see also* N.C.G.S. § 160A-384(a) (1999). Plaintiffs neither alleged in their complaint nor presented any argument in their brief to this Court regarding whether the statutes were complied with. Instead, Plaintiffs argue they did not receive a "full and fair hearing" similar to a quasi-judicial hearing whereby they could offer evidence, cross-examine adverse witnesses, and inspect documents. Because the Council's adoption of the two ordinances was a legislative act, however, Plaintiffs were not entitled to those rights afforded in a quasi-judicial hearing.

In this case, prior to making its decision, the Council received the Commission's recommendation and report, storm water management studies, traffic reports, community meeting notes, and memorandums. The Commission found both petitions were consistent with and promoted the goals of the Small Area Plan and that adoption of the ordinances would assist in promoting the expansion and development of the SouthPark area. Plaintiffs have not shown that the Council's decision was "patently in bad faith," "whimsical," or "lacked fair and careful consideration." To the contrary, the record shows the Council's decision was based on and consistent with the various reports and recommendations and entered after fair and careful consideration. Accordingly, the Council's decision is not arbitrary or capricious. Furthermore, Plaintiffs have made no showing, indeed no argument, the ordinances are "unduly discriminatory."

## C

### Enabling Statute

North Carolina's enabling statute, found at N.C. Gen. Stat. § 160A-383, delegates a city's authority to pass zoning regulations and provides:

> Zoning regulations shall be made in accordance with a comprehensive plan and designed to lessen congestion in the streets; to secure safety from fire, panic and other dangers; to promote health and the general welfare; to provide adequate light and air; to prevent the overcrowding of land; to avoid undue concentration of population; and to facilitate the adequate provision of transportation, water, sewerage, schools, parks, and other public requirements. The regulations shall be made with reasonable consideration, among other things, as to the character of the district and its peculiar suitability for particular uses, and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout such city.

N.C.G.S. § 160A-383 (1999). It is not necessary that a zoning ordinance accomplish "all of the purposes specified in the enabling act. It is sufficient that the legislative body of the city had reasonable ground upon which to conclude that one or more of those purposes would be accomplished or aided by the amending ordinance." *Zopfi*, 273 N.C. at 436-37, 160 S.E.2d at 332.

In this case, Zoning Ordinance Nos. 1631-Z and 1632-Z were adopted in accordance with the Small Area Plan, which included

goals of: creating a greater mixture of land uses; planning for future mass transit service; developing pedestrian improvements; and developing a public gathering space and a network of green spaces. Traffic studies performed with respect to the two petitions did not show any "significant effect" on traffic and the surrounding neighborhoods. Moreover, the Commission offered that the ordinances would (1) have a "major positive effect" on the City's land use and overall viability and (2) "facilitate the adequate provision of transportation." Accordingly, as the Council adopted the ordinances in due regard to section 160A-383, it did not violate its delegated zoning authority.[7]

Affirmed.[8]

Judges McGEE and THOMAS concur.

7. We note that while Plaintiffs argue in their brief to this Court that the City violated the delegated authority of its local zoning act, Plaintiffs did not raise the local zoning procedures in their complaint or before the trial court. Accordingly, the trial court did not address whether the City violated local zoning procedures and we will not do so for the first time on appeal.

8 In light of our decision, we need not address whether Plaintiffs lacked standing to bring their cause of action. Moreover, we need not address Plaintiffs' remaining assignments of error as Plaintiffs have abandoned these assignments of error by failing to present argument in their brief regarding these assignments of error. N.C.R. App. P. 28(a).