COUCOULAS/KNIGHT PROPERTIES, LLC, PLAINTIFF v. TOWN OF HILLSBOROUGH, A NORTH CAROLINA MUNICIPALITY AND ITS BOARD OF COMMISSIONERS, DEFENDANTS

No. COA08-1087

(Filed 1 September 2009)

## 1. Zoning— rezoning request denied—not discriminatory

The superior court erred by overturning the denial of plaintiff's rezoning request on the ground that it was unduly discriminatory. Substantial evidence supported the Town's denial and there was no evidence that plaintiff was treated differently from others similarly situated. The superior court did not apply the whole record test properly.

## 2. Zoning— consistency statement—approval of rezoning not required

Plaintiff's cross-assignment of error in a zoning case was overruled where plaintiff contended that approval of the rezoning request was required after the Board's adoption of a statement that the rezoning was consistent with the Town's zoning plan. Consistency between the proposed rezoning and the plan does not mean that denial of the proposal was inconsistent.

## 3. Zoning— rezoning—discretion of Board—not limited by ordinance

The Town was not required to approve plaintiff's rezoning request by language in an ordinance that the discretion of the Board to deny rezoning is not limited if it determines that the rezoning is not in the public interest. The ordinance gives the Board the authority to deny requests that are not in the public interest; the public interest safety valve is not applicable here.

## 4. Zoning— denial of change—not arbitrary and capricious— comments of Board members

The denial of a zoning request was not arbitrary and capricious where nothing in the record supported the assertion that any of the Board members acted arbitrarily; rather, the whole record indicates that the Board gave careful consideration to the request and that those members who voted against it did so with a reasonable basis.

Judge CALABRIA dissenting.

Appeal by defendants from order and judgment entered 1 April 2008 by Judge Donald W. Stephens in the Orange County Superior Court. Heard in the Court of Appeals 21 May 2009.

*Brown & Bunch, PLLC, by LeAnn Nease Brown, for plaintiff-appellee.*

*The Brough Law Firm, by Robert E. Hornik, Jr., for defendants-appellants.*

BRYANT, Judge.

The Board of Commissioners of the Town of Hillsborough (defendants) appeal from an order and judgment of the Orange County Superior Court concluding that the denial of plaintiff's conditional use zoning request unintentionally treated plaintiff in a manner different than other similarly situated applicants and was unduly discriminatory toward plaintiff, overturning the denial, and remanding the zoning request to defendants with instructions to grant the request. Defendants also appeal from a judgment and order requiring defendants to take action on plaintiff's conditional use permit request. As discussed below, we reverse.

*Facts*

Plaintiff owns 2.16 acres of land in three separate lots located at the intersection of North Churton Street and Corbin Street in Hillsborough, North Carolina ("the property"). A small portion of the property is zoned NB (neighborhood business) and the remainder of the property is zoned R-20 (medium density residential). The R-20 district allows development of neighborhoods primarily composed of single and two-family residences. The property is also located within Hillsborough's historic district.

North Churton Street is designated by the Churton Street Corridor Strategic Plan ("the plan") as a "district gateway." According to the plan, district gateways function as "transition points between one district and another."

On 28 July 2006, plaintiff submitted a request to rezone the property to a Entranceway Special Use ("ESU") zoning district. Hillsborough's Zoning Ordinance established an ESU district pursuant to N.C. Gen. Stat. § 160A-382, and, pursuant to that statute, property may be zoned an ESU district only in response to a petition by the owner of the property.

Defendants bring forth the following arguments on appeal: whether the superior court erred by (I) determining that the denial of plaintiff's rezoning request had the unintentional consequence of being unduly discriminatory and treating plaintiff in a manner different than others similarly situated; (II) ordering defendants to grant plaintiffs' rezoning request; (III) ordering defendants to take action on plaintiffs' application for a special use permit in 07 CVS 685.

Through cross-assignment of error pursuant to N.C. R. App. P. 10(d), plaintiff argues the superior court deprived him of an alternative basis in law for supporting the final order and judgment on the following bases: (I) defendants' actions were inconsistent with the purposes of Hillsborough's comprehensive plan; (II) defendants' denial did not bear a substantial relationship to the public health, safety, morals or welfare and was not in the public interest; and (III) defendants' actions were whimsical, willful, unreasonable, arbitrary, and capricious.

## Defendants' Arguments

[1] Defendants argue that the superior court erred in overturning its denial of plaintiff's rezoning request on the ground that the Board's decision resulted in plaintiff being treated differently than other similarly situated applicants and was unduly discriminatory. We agree.

"Ordinarily, the only limitation upon [a municipal body's] legislative authority is that it may not be exercised arbitrarily or capriciously." *Allred v. City of Raleigh*, 277 N.C. 530, 545, 178 S.E.2d 432, 440 (1971). Furthermore,

> [w]hen the most that can be said against [zoning] ordinances is that whether it was an unreasonable, arbitrary or unequal exercise of power is fairly debatable, the courts will not interfere. In such circumstances the settled rule seems to be that the court will not substitute its judgment for that of the legislative body. charged with the primary duty and responsibility of determining whether its action is in the interest of the public health, safety, morals, or general welfare.

*In re Appeal of Parker*, 214 N.C. 51, 55, 197 S.E. 706, 709, *disc. appeal dismissed, Parker v. Greensboro*, 305 U.S. 568, 83 L. Ed. 358 (1938). In determining whether a Board decision is arbitrary and capricious, "the reviewing court must apply the 'whole record' test." *Sun Suites Holdings, LLC, v. Board of Aldermen of Town of Garner*, 139 N.C. App. 269, 272, 533 S.E.2d 525, 528, *writ of supersedeas and disc.*

*review denied*, 353 N.C. 280, 546 S.E.2d 397 (2000) (internal citation and quotation marks omitted). This test

> requires the reviewing court to examine all competent evidence (the 'whole record') in order to determine whether the [Board's] decision is supported by substantial evidence.
>
> Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. The reviewing court should not replace the [Board's] judgment as between two reasonably conflicting views; [w]hile the record may contain evidence contrary to the findings of the [Board], this Court may not substitute its judgment for that of the [Board].

*SBA, Inc. v. City of Asheville City Council*, 141 N.C. App. 19, 26, 539 S.E.2d 18, 22 (2000) (internal quotation marks and citations omitted). Further, in reviewing the superior court's order

> the appellate court examines the trial court's order for error of law. The process has been described as a twofold task: (1) determining whether the trial court exercised the appropriate scope of review and, if appropriate, (2) deciding whether the court did so properly.

*Amanini v. N.C. Dep't of Human Resources*, 114 N.C. App. 668, 675, 443 S.E.2d 114, 118-19 (1994) (internal citations omitted). "[A] determination [that the trial court erred in its review] might well require remand of the case to the trial court for its application of the proper standard of review." *Sun Suites*, 139 N.C. App. at 274, 533 S.E.2d at 528 (citation omitted). However, in the interests of judicial economy, when the entirety of the record is before us, this Court may conclude remand is unnecessary. *See id.*, 533 S.E.2d at 528-29. Thus, "if we conclude there is substantial evidence in the record to support the Board's decision, we must uphold it." *Meads v. N.C. Dep't of Agric.*, 349 N.C. 656, 663, 509 S.E.2d 165, 170 (1998).

Here, the superior court stated the proper standard of review, the whole record test; however, because substantial evidence supports the Board's decision, we conclude that the court did not apply the whole record test properly.

Pursuant to N.C.G.S. § 160A-385(a), when a valid protest petition has been submitted in response to a rezoning request, as the parties agree occurred here, the rezoning does not become effective except by a favorable vote of three-fourths of the Board, a supermajority.

N.C. Gen. Stat. § 160A-385(a)(1) (2007). The record shows an active debate among board members about the appropriateness of the ESU designation for the property during the 9 April 2007 meeting where the matter was considered. Essentially, the meeting minutes indicate that two board members expressed concern that the ESU designation was not intended for residential or historic district properties, while three board members believed that the ESU designation was appropriate for the property. Reflecting these opinions, the vote was three to two in favor of the rezoning. Thus, a simple majority of the Board actually supported plaintiff's proposed project, but the supermajority required by section 160A-385(a)(1) did not.

The superior court, in its review of the Board's decision, concluded that

> the result of the vote of the Board . . . denying plaintiff's conditional use rezoning request had the unintended consequence and result of treating plaintiff in a manner that is different than other similarly situated applicants for rezoning requests and of being unduly discriminatory to plaintiff.

The superior court failed to make a conclusion about whether substantial evidence in the record supported the Board's decision. Instead, the superior court overturned the Board's decision based on an equal protection argument.

"The Fourteenth Amendment to the United States Constitution and Article I Sec. 19 of the Constitution of North Carolina provide that no person shall be deprived of the equal protection of the laws." *Durham Council of the Blind v. Edmisten, Att'y Gen.*, 79 N.C. App. 156, 158, 339 S.E.2d 84, 86 (1986), *appeal dismissed and disc. review denied*, 316 N.C. 552, 344 S.E.2d 5 (1986). "Equal protection guards citizens from being treated differently under the same law from others who are similarly situated." *Gainey v. N.C. Dep't of Justice*, 121 N.C. App. 253, 262, 465 S.E.2d 36, 43 (1996).

After a thorough review of the whole record, we are unable to identify any evidence, let alone substantial evidence, that plaintiff was treated differently from others similarly situated. The superior court in its order made the following finding of fact, which appears to be the main basis for the conclusion quoted above:

> 63. Some Commissioners observed that denial of plaintiff's conditional use rezoning request was not consistent with prior actions

of the Board such as a recently approved project on Churton Street, in the Historic District that included condominiums.

Plaintiff cites various comments made by board members during the 9 April 2007 meeting which he contends show differential treatment. For example, Commissioner Hallman opined that denial of this project based on a strict application of zoning ordinances or on a technicality would be inconsistent with past actions. In addition, Commissioner Dancy, in voicing support for the project, noted that issues similar to those raised by the project were raised during the Board's consideration of the condominiums on Weaver Street, a project which was approved. However, these comments do not support the portion of the superior court's finding that the Board had "recently approved [a] project on Churton Street, in the Historic District that included condominiums." In fact, the parties stipulated that none of the prior ESU rezoning requests concerned property in the historic district.

The comments cited by plaintiff reflect differing opinions by various members, but they are not evidence of undue discrimination and different treatment of similarly situated properties. Simply put, neither the board members' comments nor any other part of the record specifies a single specific property that is similarly situated to the property here in terms of size, proposed use, density, historic nature or any other factor for which an ESU rezoning request was granted.

The Board's decision was supported by substantial evidence and the superior court erred in replacing the Board's "judgment as between two reasonably conflicting views" about whether the rezoning request should be granted. See SBA, 141 N.C. App. at 26, 539 S.E.2d at 22. Reviewing courts may not "substitute [their] opinion for that of the legislative body so long as there is some plausible basis for the conclusion reached by that body." Ashby v. Town of Cary, 161 N.C. App. 499, 503, 588 S.E.2d 572, 574 (2003) (internal citation and quotation marks omitted).

Further, the superior court erred in remanding the matter in 07 CVS 685 for the Board to consider plaintiff's special use permit application for the property. Plaintiff does not dispute that rezoning of the property was a prerequisite to obtaining an ESU special use permit pursuant to zoning ordinances §§ 2.16 and 4.39. Because the superior court erred in 07 CVS 684 by ordering the Board to grant plaintiff's rezoning request, plaintiff was not entitled to Board action on the special use permit application.

*Plaintiff's Cross-Assignments of Error*

[2] Appellate Rule 10(d) is "designed to protect appellees who have been deprived . . . of an alternative basis in law upon which their favorable judgment might be supported and who face the possibility that on appeal prejudicial error will be found in the ground upon which [the] judgment was actually based." *Stevenson v. Dept. of Ins.*, 45 N.C. App. 53, 56-7, 262 S.E.2d 378, 380 (1980). Plaintiff first argues that the consistency statement adopted by the board pursuant to N.C. Gen. Stat. §160A-383 required rezoning of the property. This argument is without merit.

Plaintiff is correct that this statute requires that

[z]oning regulations shall be made in accordance with a comprehensive plan. When adopting or rejecting any zoning amendment, the governing board shall also approve a statement describing whether its action is consistent with an adopted comprehensive plan and any other officially adopted plan that is applicable, and briefly explaining why the board considers the action taken to be reasonable and in the public interest. That statement is not subject to judicial review.

N.C. Gen. Stat. §160A-383 (2009). The Board here adopted a consistency statement, which provided that the rezoning request was consistent with Hillsborough's comprehensive zoning plan. Plaintiff contends that this action required rezoning approval because "failure to zone in a manner consistent with the Comprehensive Plans cannot withstand judicial scrutiny." Plaintiff's reasoning is misplaced. The fact that the rezoning would have been consistent with the comprehensive zoning plan does not mean than that denying the rezoning request and maintaining the status quo was *inconsistent* with the comprehensive plan. There is no suggestion that the zoning in place at the time of the request was inconsistent with the comprehensive zoning plan. This cross-assignment of error is overruled.

[3] Plaintiff next argues that the Board's failure to approve the rezoning "did not bear a substantial relationship to the public health, safety or welfare and was not in the public interest." Plaintiff then cites language from zoning ordinance § 2.16(d) stating that "nothing in this section is intended to limit the discretion of the Board . . . to deny [rezoning] if it determines that the proposed rezoning is not in the public interest" and notes that the Board here made no such finding. Plaintiff asserts that, because the rezoning request complied with all

ESU criteria, the Board was required to approve the request unless it found that rezoning was *not* in the public interest. This argument indicates a misunderstanding of the plain language of the ordinance, which simply gives the Board the authority to deny requests that are not in the public interest, even if they otherwise comply with the ESU criteria. Here, the public interest "safety valve" is inapplicable as a supermajority of the Board failed to approve the rezoning.

**[4]** Finally, plaintiff argues that the two Board members voting against the rezoning request acted in bad faith and that the denial of the request was arbitrary and capricious. "The 'arbitrary or capricious' standard is a difficult one to meet." *Lewis v. N.C. Dep't of Human Resources*, 92 N.C. App. 737, 740, 375 S.E.2d 712, 714 (1989). Decisions are arbitrary and capricious only when "they are patently in bad faith, . . . or whimsical in the sense that they indicate a lack of fair and careful consideration or fail to indicate any course of reasoning and the exercise of judgment. . . ." *Id.* (internal citations and quotation marks omitted).

The dissent asserts that "Commissioner Lloyd voted no because she stated that only commercial property was intended to be part of ESU zoning, that the Vision 2010 Plan was intended to prohibit apartments or condominiums in the Historic District, and that ESU was drafted to accommodate 'something large south of town." While Commissioner Lloyd did make those comments, she did not explain the basis of her vote. The dissent makes much of Commissioner Lloyd's expression of her opinion about the purposes behind various ordinances. The mere fact that a commissioner expresses her opinions of the intention behind an ordinance does not reflect bad faith.

The dissent also contends that Commissioner Gering "lacked impartiality" because he suggested a distinction between "entranceways" and "gateways" in the Churton Street Corridor Plan. The dissent contends that this concern with "semantics" shows that he could not be impartial. In actuality, the record shows that these comments were made in the context of Commissioner Gering's concern about ESU rezoning in the historic district, something that had not previously been done.

Under the correct standard of review, the whole record test, the reviewing court's task is not to comb through the record for comments reflecting disagreements, mistakes or misunderstandings, but to determine whether substantial evidence supported the commissioners' decisions in voting against the rezoning. As noted above, the

parties stipulated that none of the previously granted ESU rezoning requests concerned property in the historic district. The record reveals that after a motion was made for rezoning, Commissioner Gering reiterated that he believed the proposed project was "not in keeping with . . . the historic district nature of the neighborhood." There is nothing in the record to suggest that this distinction was not the basis for the no votes from Commissioners Gering and Lloyd.

Nothing in the record supports the assertion that any of the Board members acted arbitrarily; rather, as discussed above, the whole record indicates that the Board gave careful consideration to the request and that those members voting against it did so with a reasonable basis, namely that the historic district property was not appropriate for designation as an ESU district.

REVERSED.

Judge ELMORE concurs.

Judge CALABRIA dissents in a separate opinion.

CALABRIA, Judge, dissenting.

I disagree with the majority's decision to reverse the trial court. The majority holds that the trial court erred in concluding that the denial of plaintiff's conditional use rezoning request unintentionally treated plaintiff in a manner different than other similarly situated applicants and was unduly discriminatory. Because I conclude that substantial evidence exists that the Board of Commissioners' ("the Board") denial of plaintiff's request was unduly discriminatory, and, alternatively, that those Board members voting against the request acted in an arbitrary and capricious manner, I would affirm the trial court. Thus, I respectfully dissent.

"[I]n order to be legal and proper, conditional use zoning. . . must be reasonable, neither arbitrary *nor unduly discriminatory. . .*" *Chrismon v. Guilford Cty.*, 322 N.C. 611, 622, 370 S.E.2d 579, 586 (1988) (emphasis added). The zoning power is subject to "the constitutional limitation forbidding arbitrary and unduly discriminatory interferences with the right of property owners." *In re Ellis*, 277 N.C. 419, 424, 178 S.E.2d 77, 80 (1970).

The majority holds that the Board's denial of plaintiff's rezoning request was not unduly discriminatory because no evidence exists to

support the conclusion that plaintiff's property was treated differently than other similarly situated properties. I disagree.

"[A] trial court's findings of fact in a bench trial have the force of a jury verdict and are conclusive on appeal if there is competent evidence to support them, even though there may be evidence that would support findings to the contrary." *County of Moore v. Humane Soc'y of Moore County, Inc.*, 157 N.C. App. 293, 295, 578 S.E.2d 682, 684 (2003).

The majority contends that the trial court erred in finding as fact that the denial of plaintiff's request was inconsistent with "prior actions of the Board such as a recently approved project on Churton Street, in the Historic District that included condominiums" because "the parties stipulated that none of the prior rezoning requests concerned property in the historic district, as is the property here."

In the instant case, the trial court's finding that is considered error by the majority is adequately supported by substantial evidence in the record, including Commissioner Dancy's statements in the record that denial of plaintiff's request was inconsistent with previous actions of the Board in which it has "done a lot of different things to accommodate" other projects which were not in strict compliance with zoning regulations. Commissioner Dancy specifically noted that "the same type of issues" in the present case had also come up when the Board reviewed approval of the condominiums at Weaver Street. Commissioner Dancy was referring to the Gateway Center project, which was approved in the Historic District even though the plans for the top floors of that building were made up of residential condominiums when the project was approved. This evidence is sufficient to support the trial court's finding.

The majority, in order to discredit the trial court's finding, makes reference to a stipulation of the parties that refers to an entirely different issue. The stipulation referenced by the majority states:

Hillsborough has rezoned twenty-five parcels as part of five separate applications for conditional use rezoning to Entranceway Special Use. They are different sizes and in different locations throughout Town. These properties contain different uses. Three of the five conditional use rezonings include substantial residential components. Only two of the five are large scale. The smallest project is 4.5 acres in area. *None of the parcels is located in Hillsborough's Historic District.* In none of these

approvals has the Board stated that the definition of "entrance-way" was a factor to consider or that residential use was not allowed in the ESU district.

(emphasis added). This stipulation clearly refers to the fact that there are no parcels located in the Historic District that have been approved for Entranceway Special Use ("ESU") zoning. The stipulation does not state that there are no projects which include condominiums that have been approved in the Historic District. The majority opinion fails to recognize that the trial court's finding and the stipulation of the parties deal with two different issues, and thus this stipulation cannot be used to discredit the trial court's finding of fact.

Therefore, I disagree with the majority's conclusion that the only support for the trial court's finding is the differing opinions of various Board members. The trial court found as fact, supported by substantial evidence, that other approved projects in the Historic District have had residential condominiums. Since plaintiff's project was denied because it was a project in the Historic District that had residential condominiums, plaintiff's project was treated differently than other similarly situated projects. As a result, the trial court correctly concluded as a matter of law that the Board's denial of plaintiff's rezoning request was unduly discriminatory.

The majority also concluded that the record did not support a finding that the two Board members voting against the rezoning request acted in bad faith and that the denial of the request was arbitrary and capricious. I disagree.

A decision is "arbitrary and capricious 'if it clearly evinces a lack of fair and careful consideration or want of impartial, reasoned decisionmaking.'" *Vulcan Materials Co. v. Guilford Cty. Bd. of Comrs.*, 115 N.C. App. 319, 324, 444 S.E.2d 639, 643 (1994)(quoting *Joyce v. Winston-Salem State Univ.*, 91 N.C. App. 153, 156, 370 S.E.2d 866, 868 (1988)). Decisions that are made "patently in bad faith," are "whimsical," or "lacked fair and careful consideration" are arbitrary and capricious. *Summers v. City of Charlotte*, 149 N.C. App. 509, 518, 562 S.E.2d 18, 25 (2002). Since the two members who voted against the request cited reasons wholly unsupported by the Zoning Ordinance, the Comprehensive Plans (including the Churton Street Corridor Plan ("the CSC Plan"), the Strategic Growth Plan and the Vision 2010 Plan), or the facts in the record, the failure to approve plaintiff's rezoning request was arbitrary and capricious.

Commissioner Lloyd voted "no" because she stated that only commercial property was intended to be part of ESU district zoning, that the Vision 2010 Plan was intended to prohibit apartments or condominiums in the Historic District, and that ESU district zoning was created to accommodate "something large south of Town." These reasons demonstrate that Commissioner Lloyd failed to give fair and careful consideration to the evidence before the Board.

The Permitted Use Table—Special Use Districts, found at § 3.4.1 of the Zoning Ordinance, specifically lists "Residential" as a permissible use in ESU district zoning as long as the residential use is "part of a planned/mixed use development." Plaintiff's proposed project was a "planned/mixed use development," as it would include a residential component as well as the already established Sinclair Station, which contains office and commercial space. This clearly falls within the ESU district requirement. Further, the Zoning Ordinance requires that projects be a minimum of 2 acres to qualify for ESU district zoning. Plaintiff's property is 2.16 acres. Based on the contradictions between Commissioner Lloyd's reasons for denial and the evidence, her "no" vote for these reasons could not have been the result of "reasoned decisionmaking."

Commissioner Lloyd's statement that the Vision 2010 Plan was intended to prohibit apartments or condominiums in the Historic District further renders her decision to deny plaintiff's request arbitrary and capricious. First, nothing in the Vision 2010 Plan precludes condominiums in the Historic District. Instead, the Vision 2010 Plan speaks of a "diversity of housing opportunities" supporting a "diverse community." Second, as noted above, the Gateway Center project was approved in the Historic District even though it contained a residential condominium component. Third, any project to be built in the Historic District would still need approval from the Historic District Commission. Any design concerns for the project would be remedied and addressed in that review.

The record also suggests that Commissioner Lloyd was not impartial when determining that plaintiff's project did not comport with the Vision 2010 Plan. Commissioner Lloyd specifically stated that she had "worked on the Vision 2010 Plan." She admitted that while not having any more apartments or condominiums in the Historic District was discussed, it was "not written into the Plan." Her further statements that this idea was "overlooked" and that it "had certainly been the intent" suggest that *Commissioner Lloyd* intended for additional restrictions to be contained in the Vision 2010 Plan but

that, for whatever reason, her proposals were not accepted and included in the final draft. Therefore, Commissioner Lloyd's reasoning for denying plaintiff's rezoning request on this basis was not the result of impartial decisionmaking, but rather on the basis of what Commissioner Lloyd wished the law to be. Commissioner Lloyd's denial of plaintiff's rezoning request was thus arbitrary and capricious.

The record also indicates that Commissioner Gering's vote against plaintiff's rezoning request was arbitrary and capricious. A full review of the record suggests that Commissioner Gering also failed to give "fair and careful consideration" to the evidence before him and that he was not impartial in his decisionmaking.

Commissioner Gering voted against plaintiff's request because he believed that the location of the property at the corner of Churton and Corbin Streets was not an "entranceway" into the Town of Hillsborough, but was instead a "district gateway" and that the Zoning Ordinance required the property to be an "entranceway" for approval. This reasoning directly conflicts with evidence in the record and a careful analysis of the Zoning Ordinance.

The Zoning Ordinance states that the purpose of an ESU district is to provide "for the development of well planned and fully integrated projects containing a diverse mixture of commercial, office, and employment uses *along the primary entrances to the Town of Hillsborough*." (emphasis added). Further, the Ordinance requires that property proposed for ESU rezoning:

1) Is adjacent to and has frontage along a street classified as an arterial or higher *that leads into the Hillsborough area*; and

2) If so located in relationship to existing or proposed public streets that traffic generated by the development of the tract proposed for rezoning can be accommodated without endangering the public health, safety, or welfare; and

3) Will be served by Hillsborough water and sewer lines when developed.

(emphasis added). Thus, based on the plain language of the Zoning Ordinance, in order to qualify for ESU district zoning, a property must be located on a road that *leads into Town*. Plaintiff's property is located at the corner of North Churton Street and Corbin Street. Churton Street is "a key transportation link for commuters and visi-

tors from all directions" and "forms the central transportation corridor serving Hillsborough." Churton Street "connects Hillsborough to Chapel Hill/Carrboro and I-40 to the south and to Caswell County, and Person County via Hwy 57, to the north." Additionally, the Corbin/Churton Street intersection is "one block from the city limits" and Sinclair Station was specifically approved because the Board believed it was located at an "entranceway" to Hillsborough. With no requirement that property rezoned as an ESU district must be an "entranceway," no definition of "entranceway" in the Zoning Ordinance, and specific evidence in the record demonstrating that Churton Street *is* an entranceway into the Town of Hillsborough, Commissioner Gering's refusal of plaintiff's rezoning request was not the result of reasoned decisionmaking.

Commissioner Gering's refusal of plaintiff's rezoning request also lacked impartiality. Commissioner Gering heavily debated with Commissioner Lowen about the purported distinction between an "entranceway" and a "gateway" as defined by the CSC Plan. Yet Commissioner Gering's insistence that the distinction was so great as to support denial of plaintiff's rezoning request on the basis of such semantics stemmed from the fact that he "had a great deal of involvement in crafting the [CSC] Plan." Thus, Commissioner Gering's denial of plaintiff's rezoning was not impartial, but rather, like Commissioner Lloyd, was from the viewpoint of one advocating for what he wished the law to be. Although no part of the CSC Plan prohibits ESU district zoning, Commissioner Gering believed it was a "misreading" of the plan to support any other interpretation. Commissioner Gering's denial of plaintiff's rezoning request was thus not an impartial, reasoned decision made after a fair and careful consideration of the evidence, but was instead arbitrary and capricious.

Because the trial court correctly concluded that the Board's denial of plaintiff's request was improper, I would also affirm that portion of the trial court's order remanding the matter in 07 CVS 685 for the Board to consider plaintiff's special use permit application for the property.

The trial court should be affirmed.