ENOCHS, Judge.
Pittsboro Matters, Inc., George A. Robertson, Amanda T. Robertson, Christopher M. Watkins, and Ducka Kelly (collectively "Plaintiffs")[1] appeal the order entered 9 December 2015 by the Honorable Paul C. Ridgeway in Chatham County Superior Court granting the motion to dismiss of the Town of Pittsboro ("the Town") and Chatham Park Investors, LLC ("CPI") (collectively "Defendants"). After careful review, we affirm.
Factual Background
Pittsboro Matters, Inc. ("Pittsboro Matters") first began as an unincorporated association of residents of the Town, who were concerned with the impact that commercial development could have on their community. Pittsboro Matters became more formalized when Jeffrey Starkweather, a resident of Pittsboro, and Amanda T. Robertson, also a resident of Pittsboro and an individual plaintiff in this case, filed articles of incorporation with the North Carolina Secretary of State on 31 July 2014 creating a non-profit corporation with Starkweather and Robertson as officers. According to the articles of incorporation, Pittsboro Matters was not to have members. The articles further provided that Pittsboro Matters was "organized for charitable and educational purposes to assist peoples living in Chatham County and the Town of Pittsboro in the preservation of the local economy, environment and culture of their community."
George A. Robertson, Amanda T. Robertson, Christopher M. Watkins, and Ducka Kelly (collectively "Individual Plaintiffs") are members of Pittsboro Matters and own property or reside in either the Town or in the surrounding Chatham County area directly adjacent to and abutting the proposed property development about which this suit arose.
On 20 February 2013, the Town, in anticipation of the future development plans of CPI, and at the request of CPI, adopted an ordinance extending the Town's extraterritorial jurisdiction to include approximately 1,900 acres of land. The ordinance put all land to be used in the future development discussed below under the Town's land-use regulatory jurisdiction. Because this is the second time this matter is before this Court, we adopt in pertinent part the factual background from our earlier decision Pittsboro Matters, Inc. v. Town of Pittsboro , --- N.C. App. ----, 790 S.E.2d 751 (2016) (unpublished) ( "Pittsboro Matters I ").
On 8 April 2013, [defendant Town] adopted an Ordinance Amending the Pittsboro Zoning Ordinance (the "PDD Ordinance") to create the Planned Development District zoning district, and to establish regulations and requirements regarding such districts.
On 9 June 2014, defendant Town's Board of Commissioners approved an ordinance ("First Rezoning Ordinance") rezoning approximately 7,119 acres of land (the "Property") in Pittsboro and its extraterritorial jurisdiction to a Planned Development District to be called Chatham Park ("Chatham Park PDD"), adopted by defendant Town in April 2013. As proposed by [intervenor CPI] and owner of the Property, Chatham Park PDD would be developed for 22,000 new residential dwelling units and 22,000,000 square feet of nonresidential structures and uses, all in an area previously zoned and used predominantly for low-density residential uses. Also on 9 June 2014, defendant Town approved a Master Plan for Chatham Park PDD.
About two months later, on 6 August 2014, several residents of Chatham County (who own and reside on land nearby or adjacent to portions of the Property) and a nonprofit entity, Pittsboro Matters, Inc., filed a complaint in Chatham County Superior Court ("First Lawsuit") challenging the legality of defendant Town's actions in adopting the First Rezoning Ordinance. The developer, intervenor CPI, intervened in the First Lawsuit.[2]
In December 2014, defendant Town adopted a new ordinance amending the Town of Pittsboro Zoning Ordinance ("Zoning Ordinance"), and the Town of Pittsboro Zoning Map ("Second Rezoning Ordinance"), and approved a revised Chatham Park Master Plan ("Revised Master Plan"). Later that month, on 23 December 2014, Pittsboro Matters, Inc., and five of the individual plaintiffs to the First Lawsuit-George A. Robertson, J. Turner Whitted, Christopher M. Watkins, Ducka Kelly, and Greg Ogle-(collectively "plaintiffs"), filed this action ("Second Lawsuit") challenging, inter alia, defendant Town's approval of the Second Rezoning Ordinance. Specifically, plaintiffs sought
a judgment nullifying the adoption of (a) the PDD Ordinance by [d]efendant Town of Pittsboro Board of Commissioners on April 8, 2013, and (b) the First Rezoning Ordinance and Chatham Park Master Plan on June 9, 2014, and (c) the Second Rezoning Ordinance and the approval of the revised Chatham Park Master Plan, by [d]efendant Town of Pittsboro Board of Commissioners on December 8, 2014.
Intervenor CPI moved to intervene in the Second Lawsuit, and on 23 February 2015, the trial court allowed intervention. On 27 February 2015, defendant Town and intervenor CPI each filed an answer and moved to dismiss the complaint.
On 20 March 2015, Jeffrey Starkweather, an officer of plaintiff Pittsboro Matters, Inc., read an article in the local Chatham County newspaper indicating that the previous day Ken Atkins, an economic development consultant for intervenor CPI, announced at a Rotary Club meeting that work on a U.S. Highway 64 overpass to connect the north and south parts of the Chatham Park property would soon begin. That same day, Starkweather informed Robert Hornik, attorney for plaintiffs, about the article.
On 23 March 2015, Starkweather spoke with defendant Town's planner, Stuart Bass, about the road/overpass work. Bass advised Starkweather that intervenor CPI did not need approval from defendant Town to begin construction of the U.S. Highway 64 overpass and that this was strictly an issue between the North Carolina Department of Transportation ("NCDOT") and intervenor CPI. Prior to that, Bass had not responded to Hornik, who had made a formal request on behalf of plaintiffs in October 2014 for a determination regarding whether the U.S. 64 bypass project required site plan approval. On 27 March 2015, Hornik wrote a letter on behalf of plaintiffs to defendant Town's attorney Paul Messick, requesting a stop work order on land clearing and construction of the U.S. Highway 64 overpass.
On 6 April 2015, Hornik received a letter from Messick responding to his 27 March 2015 letter. Messick indicated that the highway construction work was not "development" subject to regulation under defendant Town's Zoning Ordinance or under the Chatham Park Master Plan then in effect, despite what plaintiffs contend was contrary language in certain relevant provisions of the zoning ordinance. He also wrote that the project involved no subdivision of land for residential or commercial purposes.
On 10 April 2015, plaintiffs moved for a preliminary injunction to stop all ongoing development and to prohibit all future development in Chatham Park. The basis for plaintiffs' motion was their contention that intervenor CPI was violating the Revised Master Plan that plaintiffs sought to have declared null and void in their complaint filed 23 December 2014 and that defendant Town was violating provisions of defendant Town's Zoning Ordinance and/or Subdivision Regulations by allowing intervenor CPI to proceed. Specifically, plaintiffs sought an order "[e]njoining all development and/or site improvement on or on behalf of Intervenor CPI in Chatham Park until further Order of the Court," specifically asking the court to "[r]estrain and enjoin[ ] all work by or for Intervenor, [CPI], pursuant to the Encroachment Agreement and/or pursuant to any and all driveway permits or other permits issued by the North Carolina Department of Transportation with respect to the bridge construction project and/or the construction of 'Chatham Parkway.' "
Plaintiffs' motion for preliminary injunction came on for hearing on 20 April 2015 in Chatham County Superior Court, the Honorable Elaine M. Bushfan, Judge presiding. At the hearing, plaintiffs argued that the highway construction work then underway was part of the Chatham Park development, which plaintiffs argued required intervenor CPI to seek and obtain defendant Town's Board approval before commencing "development activity." Plaintiffs' motion was also based on their claim that the highway construction work was proceeding without approval required by defendant Town's Zoning Ordinance and/or Subdivision Regulations, as the work was being done by a private developer, not at NCDOT's request or as part of an NCDOT contract.
The trial court denied the request for a preliminary injunction in a detailed order entered 30 April 2015. Plaintiffs did not appeal the order denying their motion for a preliminary injunction "even though [they] believed that substantial rights could be affected by the denial of [their] motion."
On or about 19 May 2015, intervenor CPI submitted an again-revised Master Plan and a Third Rezoning Application. In June 2015, defendant Town adopted a new PDD Ordinance, which "attempted to correct the procedural deficiencies which [p]laintiff[s] brought to [defendant Town's] attention in the Complaint." On 10 August 2015, defendant Town adopted a new rezoning ordinance ("Third Rezoning Ordinance"). Because of the Third Rezoning Ordinance, plaintiffs anticipated that intervenor CPI and/or defendant Town would file a motion to dismiss the Second Lawsuit as moot just as they had moved to dismiss the First Lawsuit. As a result, on 2 September 2015, plaintiffs filed a notice of voluntary dismissal of their entire action without prejudice.
Id .
On 10 August 2015, the Town Board adopted the Third Rezoning Ordinance, along with a new, revised Chatham Park Master Plan for the Subject Property. This Third Rezoning Ordinance approved the rezoning application of intervenor CPI to amend the Town's zoning map to create a Planned Development District that could be developed pursuant to the May 2015 Chatham Park Planned Development District Master Plan. This Plan required the future submission by CPI to the Town Board of "small area plans" pursuant to which CPI could seek more specific development approval of more detailed specifications for twenty-seven various "small area" sections and also separate "activity centers."
On 14 September 2015, the Town's Board of Commissioners approved a "Process for Review and Approval of Small Area Plans." This "Process" outlined very specific submittal requirements and procedures by which CPI would seek approval for the development for a "Small Area." This "Process" provided that "[t]he approved Master Plan specified specific information required to be included in any request for approval of a Small Area Plan." It further listed all of the information which would be required from CPI before the Town Board would consider a Small Area Plan application. The information required included such items as a "map showing the location and boundaries of this Small Area within the context of the full Chatham Park Master Plan," "descriptions of existing conditions within the Small Area using maps and narratives," "descriptions of proposed development within the Small Area," and "analyses of capacities, impacts, and planned provisions related to public facilities." Each of those items have sub-requirements for more specific and detailed information. Finally, the "Process" has a seven-step procedure for "submittal, review, and approval of a Small Area Plan in Chatham Park." These seven steps outline the process by which CPI would submit all of the required information and through which the Town would facilitate public information meetings, prepare and complete review of CPI's application for approval by the Town's Planning Board and Board of Commissioners, and allow for revisions of the Small Area Plans before and after approval by the Town Board.
On 28 September 2015, the Board of Commissioners adopted an ordinance entitled "Standards and Procedures for Consideration and Adoption of Development Agreements for the Town of Pittsboro" at a public meeting. This ordinance authorized "development agreements in which a developer and the defendant Town [could] ensure the adequacy of public facilities[,] encourage sound capital improvement planning[, and] provide[ ] certainty in the process of obtaining development approval and reduc[e] the economic costs of development by providing greater regulatory certainty."
On 8 October 2015, Plaintiffs filed a complaint against the Town in Chatham County Superior Court. In their complaint, they allege that the Town's Board "did not conduct any public hearing or provide any public notice" prior to its adoption of the development agreement ordinance, and further allege that the Board did not provide notice and a public hearing for its adoption of the "small area plans" process and review ordinance. Plaintiffs consequently sought the nullification of the Board of Commissioners' adoption of (1) the planned development district ordinance adopted on 11 May 2015; (2) the Third Rezoning Ordinance and revised Chatham Park Master Plan adopted on 10 August 2015; (3) the Small Area Plan process adopted on 14 September 2015; and (4) the development agreement ordinance adopted on 28 September 2015. They also sought temporary and permanent injunctive relief to prohibit the defendant Town from issuing any permits or approval for further development activity of Chatham Park.
CPI filed a motion to intervene as a party-defendant dated 21 October 2015 because of its significant interest in the subject matter of this lawsuit. None of the parties opposed CPI being added as a third party intervenor. CPI was allowed to intervene by a 5 November 2015 order pursuant to Rule 24(a) of the North Carolina Rules of Civil Procedure.
Both CPI and the Town filed answers and motions to dismiss pursuant to Rules 12(b)(1) and (6) of the North Carolina Rules of Civil Procedure on 16 November 2015. A hearing on the these motions was held before the Honorable Paul C. Ridgeway on 30 November 2015. The trial court entered an order dismissing all ten of the Plaintiffs' claims for relief on 9 December 2015. Plaintiffs timely filed notice of appeal on 29 December 2015.
Analysis
I. Standing
Before the trial court, both the Town and CPI argued that Plaintiffs lacked standing to challenge the zoning decisions. The trial court concluded that none of the Plaintiffs had standing to bring the first two of the ten claims because the complaint did not allege that any of the individual Plaintiffs owned "developable" property in Chatham County.[3] The trial court dismissed Plaintiffs' remaining claims pursuant to Rule 12(b)(6).
Plaintiffs appealed only the trial court's dismissal of their first eight claims pursuant to Rule 12(b)(6). Because the trial court dismissed Plaintiffs' claims one and two based on lack of standing, and Plaintiffs did not appeal that portion of the trial court's order, the dismissal of those claims is not properly before us on appeal. Accordingly, Plaintiffs' appeal from the trial court's dismissal of the first two claims for relief is dismissed. See Viar v. N.C. Dep't of Transp. , 359 N.C. 400, 402, 610 S.E.2d 360, 361 (2005) (dismissing appeal where the arguments in appellant's brief did not address the issue upon which the trial court's ruling was based).
II. Dismissal of Plaintiffs' Complaint
On appeal from an order granting a motion to dismiss pursuant to Rule 12(b)(6), this Court "conducts a de novo review of the pleadings to determine their legal sufficiency and to determine whether the trial court's ruling on the motion to dismiss was correct." Page v. Lexington Ins. Co. , 177 N.C. App. 246, 248, 628 S.E.2d 427, 428 (2006) (citation omitted). "We consider whether the allegations of the complaint, if treated as true, are sufficient to state a claim upon which relief can be granted under some legal theory." Bridges v. Parrish , 366 N.C. 539, 541, 742 S.E.2d 794, 796 (2013) (citation and quotation marks omitted). "The court must construe the complaint liberally and should not dismiss the complaint unless it appears beyond a doubt that the plaintiff could not prove any set of facts to support his claim which would entitle him to relief." Enoch v. Inman , 164 N.C. App. 415, 417, 596 S.E.2d 361, 363 (2004) (citation and quotation marks omitted).
However, dismissal is proper "when one of the following three conditions is satisfied: (1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim." Wood v. Guilford Cnty. , 355 N.C. 161, 166, 558 S.E.2d 490, 494 (2002).
Plaintiffs' complaint alleged ten claims for relief that were each dismissed. We need not address the first two claims because they were dismissed for lack of standing. The third claim challenges the Third Rezoning Ordinance and the Chatham Park Master Plan and requests that they be declared null and void because the Town Board acted in an arbitrary, capricious, and unreasonable manner in approving them. The fourth claim also challenges the Third Rezoning Ordinance and the Chatham Park Master Plan and requests that they be declared null and void because they do not comply with the Town's Planned Development District Ordinance. The fifth claim challenges the Chatham Park Master Plan and the Planned Development District Ordinance because neither are consistent with either the Town's Land Use Plan, the North Carolina General Statutes, or the Town's original Zoning Ordinance. Both the sixth and seventh claims challenge the Third Rezoning Ordinance and the Chatham Park Master Plan and requests that they are declared null and void because they are overly vague. Finally, the eighth claim challenges the Small Area Review and Approval Process because there was no notice given, public hearing held, or consistency statement issued with the adoption of the "Process", and because this "Process" is unduly vague.[4]
A. Claim 8
Plaintiffs' eighth claim for relief alleges procedural improprieties regarding actions taken by the Town's Board of Commissioners including: the adoption of the (1) small area plan review and approval process on 14 September 2015; and (2) development agreement ordinance on 28 September 2015. The improprieties alleged are the failure of the Town's Board to give the required notice and hold public hearings pursuant to N.C. Gen. Stat. § 160A-364 (2015), and the failure to adopt consistency statements when amending ordinances pursuant to N.C. Gen. Stat. § 160A-383 (2015). Consistency statements adopted pursuant to N.C. Gen. Stat. § 160A-383 require, "at a minimum, both a description of whether the zoning amendment is consistent with any controlling land use plan and an explanation as to why the amendment is reasonable and in the public interest." Atkinson v. City of Charlotte , 235 N.C. App. 1, 5, 760 S.E.2d 395, 398 (2014).
We conclude that this claim was properly dismissed by the trial court because the small area plan review and approval process adoption was neither the adoption of an ordinance requiring notice and a public hearing, nor a zoning amendment requiring the adoption of a "consistency statement."
Taking Plaintiffs' allegations as true, the small area plan review and approval process was adopted without notice and a public hearing. N.C. Gen. Stat. § 160A-364 sets out the procedure required "[b]efore adopting, amending, or repealing any ordinance." It requires that "the city council shall hold a public hearing on it[, and also requires that] notice of the public hearing shall be given...." This procedure, by its own terms, applies specifically to the adoption, amendment, or repeal of an ordinance .
However, while the adoption, amendment, or repeal of an ordinance in a zoning context requires notice and a hearing, the adoption of a resolution does not.
A "resolution," in effect, encompasses all actions of a municipal body other than ordinances. In this connection, it may be observed that a resolution deals with matters of a special or temporary character that does not create a new expense or status of a constant and continuing nature, while an "ordinance" prescribes some permanent rule of conduct or government to continue in force until the ordinance is repealed. Thus, an ordinance is distinctively a legislative act, while a resolution may be simply an expression of opinion or mind concerning some particular item of business coming within the legislative body's official cognizance, ordinarily ministerial in character and relating to the administrative business of the municipality. A municipal determination may be in the form of a resolution when the determination has a temporary purpose, when it is merely an expression of opinion or mind or of no binding legal effect, or when it is not applicable widely throughout the municipality. Also, the crucial test for determining that which is legislative (ordinance) from that which is administrative or executive (resolution) is whether the action taken was one making a law or one executing or administering a law already in existence .
56 Am. Jur. 2d Municipal Corporations, Etc. § 286 (2016) (emphasis added).
Upon review of the document titled "Process for Review and Approval of Small Area Plans," which was adopted by the Town on 28 September 2015 and included as an exhibit to Plaintiffs' complaint, we conclude that it is merely "administering a law already in existence," and, thus, it is a resolution and not an ordinance subject to the required notice and hearing requirements of N.C. Gen. Stat. § 160A-364. Here, the law or ordinance being administrated by the process resolution was the Chatham Park Planned Development District Master Plan, which had previously been passed by the Town's Board on 10 August 2015.
The process resolution provides the "context, overview of process, submittal requirements, and procedures" as to how Section IX of the Master Plan, which governs the Small Area Plans, will be administered. Therefore, the adoption of the process resolution was not the adoption of an ordinance which would require notice and a hearing pursuant to N.C. Gen. Stat. § 160A-364.
Plaintiffs further allege that the adoption of the process resolution required the adoption of a consistency statement pursuant to N.C. Gen. Stat. § 160A-383. This statute requires that "[w]hen adopting or rejecting any zoning amendment, the governing board shall also approve a statement describing whether its action is consistent with an adopted comprehensive plan and any other officially adopted plan that is applicable, and briefly explaining why the board considers the action taken to be reasonable and in the public interest." Id. Taking the allegations in the complaint as true, the Town's Board of Commissioners did not adopt a "consistency statement" regarding their adoption of the aforementioned "process" resolution.
A zoning amendment, with which a statutorily required "consistency statement" must be approved, as referenced in N.C. Gen. Stat. § 160A-383, is an ordinance that amends a prior zoning ordinance. As discussed above, however, the adoption of the process resolution at issue in the present case was merely the adoption of a resolution and not the "adoption or rejection of a zoning amendment." N.C. Gen. Stat. § 160A-383. Thus, no "consistency statement" was required by N.C. Gen. Stat. § 160A-383 when that resolution was adopted.
Because the adoption of the "Process for Review and Approval of Small Area Plans" by the Town's Board of Commissioners was the adoption of a resolution that administered a previously adopted ordinance, and not the adoption or rejection of a zoning amendment, Plaintiffs' claims for relief regarding the process resolution adoption were properly dismissed by the trial court. Therefore, these assignments of error are overruled.
B. Claims 3 & 5
Plaintiffs' third claim for relief alleges that the rezoning of the Chatham Park property to a Planned Development District and the approval of the Master Plan for Chatham Park were arbitrary, capricious and unreasonable because they violated the Town's zoning ordinance by either conflicting with, or not satisfying, certain minimum requirements included therein. They allege that there was insufficient procedural compliance with the PDD Ordinance and insufficient substantive compliance regarding riparian buffers, density of development, maximum building heights, and minimum landscape buffers and setbacks, and should, therefore, be declared null and void.
This Court has previously considered whether a "rezoning authorized by [a city] ordinance was invalid on the grounds that the rezoning was arbitrary and capricious; ... that the rezoning was in direct conflict with the [city's] comprehensive plan ...; [and] that the rezoning was in violation of the [city's] own zoning regulations...." Graham v. City of Raleigh , 55 N.C. App. 107, 108, 284 S.E.2d 742, 743 (1981). When considering whether a city's rezoning ordinance was arbitrary or capricious in Graham , this Court held that
[a] zoning ordinance will be declared invalid only where the record demonstrates that it has no foundation in reason and bears no substantial relation to the public health, the public morals, the public safety or the public welfare in its proper sense. Euclid v. Ambler Realty Co. , 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926) ; In re Appeal of Parker , 214 N.C. 51, 197 S.E. 706 (1938). It is not required that an amendment to the zoning ordinance in question accomplish or contribute specifically to the accomplishment of all of the purposes specified in the enabling act. It is sufficient that the legislative body of the city had reasonable grounds upon which to conclude that one or more of those purposes would be accomplished or aided by the amending ordinance. The legislative body is charged with the primary duty and responsibility of determining whether its action is in the interest of the public health, safety, morals, or general welfare. Schloss v. Jamison , 262 N.C. 108, 136 S.E.2d 691 (1964). When the action of the legislative body is reviewed by the courts, the latter are not free to substitute their opinion for that of the legislative body so long as there is some plausible basis for the conclusion reached by that body. Zopfi v. City of Wilmington , 273 N.C. 430, 160 S.E.2d 325 (1968).
A duly adopted zoning ordinance is presumed to be valid. The burden is on the complaining party to show it to be invalid.
When the most that can be said against such ordinances is that whether it was an unreasonable, arbitrary or unequal exercise of power is fairly debatable, the courts will not interfere. In such circumstances the settled rule seems to be that the court will not substitute its judgment for that of the legislative body charged with the primary duty and responsibility of determining whether its action is in the interest of the public health, safety, morals, or general welfare. (Citations omitted.)
In re Appeal of Parker , supra, 214 N.C. at 55, 197 S.E. 709.
Id . at 110-11, 284 S.E.2d at 744-45.
In their allegations claiming that the rezoning ordinance and the approval of the Master Plan were arbitrary, capricious, and unreasonable, Plaintiffs allege that the Master Plan is not in compliance with the Town's PDD Ordinance. Plaintiffs allege that the PPD Ordinance establishes the requirements for a PDD Master Plan, which must be included with a request for rezoning to a PDD district. Among these submissions required for a PDD Master Plan, but alleged to be absent in the Chatham Park Master Plan, was "(a) a utility plan showing the type and general location of existing and proposed public utilities such as water, wastewater and reuse water; (b) a general plan addressing stormwater within Chatham Park; (c) a boundary buffer plan showing transition treatments between Chatham Park and adjacent properties; and (d) a plan for development phasing within Chatham Park."
However, despite Plaintiffs' contentions, these requisite elements are not, in fact, absent. Attached to Plaintiffs' complaint is a copy of the Chatham Park Master Plan. Within this attachment, the trial court has found each of these elements:
For (a) a utility plan showing the type and general location of existing and proposed public utilities such as water, wastewater and reuse water, there is Section III of the Master Plan: Utility and Stormwater Elements. This section "summarizes water, wastewater and reuse water utilities for the proposed PDD Master Plan. For each utility type, the analysis includes: (1) identification of existing utilities; (2) identification of proposed utilities....; (3) analysis of how, if possible, existing or planned utilities can be used....; (4) descriptions of conceptual plan for proposed utilities and phasing for the Chatham Park PPD."
For (b) a general plan addressing stormwater within Chatham Park, the abovementioned Section III has a Stormwater Management Plan. This plan discusses in detail best management practices, conventional stormwater controls, low impact stormwater controls, regional stormwater systems, and Stormwater Management Plan maintenance.
For (c) a boundary buffer plan showing transition treatments between Chatham Park and adjacent properties, the Master Plan has a section about Perimeter Boundary Transitions. It goes into detail about transitions between dissimilar land uses and explains that "boundary transitions may include buffers, specific compatible land uses and/or other transitions."
Finally, for (d) a plan for development phasing within Chatham Park, there is Section VII: Development Stadards/Regulations Elements and Phasing Plan of the Master Plan. This section, specifically the subsection regarding the development's phasing plan, goes into detail about how "Chatham Park PDD will be developed in multiple phases over many years." It discusses how the size of each phase of development, the order in which development occurs, and the pace at which development occurs will be determined. It further details phasing of road design and construction, utility infrastructure improvements, stormwater mitigation, and future landscaping.
As stated above, Plaintiffs have not argued that these sections of the Chatham Park Master Plan outlining how CPI was going to meet the requirements of the PDD Ordinance were deficient in any way, but that they were altogether "absent." Because they were actually, in fact, included in the Chatham Park Master Plan, the trial court properly dismissed their claims.
Plaintiffs have also alleged in their third claim for relief that the Planned Development District Ordinance does not comport with the Town of Pittsboro Zoning Ordinance because of its insufficient substantive compliance regarding riparian buffers, density of development, maximum building heights, and minimum landscape buffers and setbacks, and should, therefore, be declared null and void. However, when a town establishes its zoning ordinance it is not a rigid structure that cannot be altered in the future. To make way for future development, a municipal entity must have the freedom to change and innovate. The PDD Ordinance is such an innovation, and provides "that all ordinances and portions of ordinances in conflict herewith are hereby repealed." Therefore, the PDD Ordinance, by its own terms, ensures it is compliant with the Town's Zoning Ordinance. Therefore, the remaining portions of Plaintiffs' third claim for relief were properly dismissed.
The Plaintiffs' fifth claim alleges that the same PDD rezoning and the Master Plan approval as discussed above were inconsistent with the Land Use Plan of the Town of Pittsboro. In this claim, Plaintiffs further allege that because N.C. Gen. Stat. § 160A-383 provides that all zoning regulations "shall be made in accordance with a comprehensive plan," and because the rezoning to a PPD and approval of the Master Plan were inconsistent with the pre-approved comprehensive plan, they should be declared null and void.
However, "by necessity a comprehensive plan must undergo changes. If any zoning plan is to be comprehensive, it must be kept up to date. It would become obsolete if the council refused to recognize the changing conditions in the community." Graham , 55 N.C. App. at 113, 284 S.E.2d at 746. A comprehensive plan is not a "rigid and immutable mold, but rather.... general guidelines for the guidance of zoning policy." Id . at 114, 284 S.E.2d at 747.
For both the ordinance that allowed the creation of planned development districts, and the ordinance that establishes the specific planned development districts of Chatham Park, the Town's Board of Commissioners adopted "consistency statements" pursuant to N.C. Gen. Stat. § 160A-383. Both statements articulate that the "actions taken by the Board are consistent with the adopted comprehensive plan, including the Land Use Plan, and other officially adopted and applicable Town plans." The Town states that they created planned development districts to "advance the vision and goals of these plans, to foster the orderly growth of the Town, and to establish a sound structure for larger developments containing residential and/or non-residential uses." The Town further states that the planned development districts for Chatham Park specifically were not only to advance their comprehensive plans vision and goals, but also to "promote the expansion of the Town's public infrastructure, encourage a variety in the Town's housing stock, and to promote the strength of the Town's economy and the creation of local jobs."
Whether the PDD Ordinance or the ordinance adopting the Chatham Park Master Plan is in conformity with the Town's Land Use Plan, or any of its other applicable plans, is a legislative decision of the Town's Board. The Board's own conclusions, as outlined in its consistency statements, as to this conformity will not be passed upon by this Court because it "is not subject to judicial review." N.C. Gen. Stat. § 160A-383. Both ordinances, and especially their consistency statements, are in compliance with N.C. Gen. Stat. § 160A-383. Therefore, the trial court did not err in dismissing the Plaintiffs' fifth claim for relief because it did not state a claim upon which relief may be granted.
C. Claim 4
The Plaintiffs' fourth claim for relief alleges that because the Town's Board of Commissioners failed to comply, and failed to require intervenor CPI to comply, with the PDD Ordinance, the Third Rezoning Ordinance and the Chatham Park Master Plan should be declared null and void. The Plaintiffs allege that the Town Board failed to comply with the PDD Ordinance by approving the Chatham Park Master Plan without requiring, as part of the initial application, certain "additional provisions," which developer/intervenor CPI would submit for review by a date certain.
The additional provisions alleged to be absent from the Master Plan include "items such as a 'Development Phasing Plan,' a 'Master Public Facilities Plan,' a 'Master Transit Plan,' and a 'Master Stormwater Plan,' all of which are required by the new PPD Ordinance." Section 5.8.3 of the Planned Development District Ordinance outlines the items which a master plan shall include. The items listed as absent in Plaintiffs' complaint each relate to an itemized requirement. However, the Chatham Park Master Plan includes all of these items and discusses them in detail. The alleged absent 'Development Phasing Plan' has a subsection titled "Phasing Plan" under Section VII. Development Standards/Regulations Elements and Phasing Plan; the 'Master Public Facilities Plan' is covered under Section IV. Public Service Elements; the 'Master Transit Plan' is detailed in Section V. Transportation Elements; and the 'Master Stormwater Plan' is covered in the subsection titled "Stormwater Management Plan" under Section III. Utility and Stormwater Elements.
Because CPI would be required to submit more detailed information, beyond that which was required in its initial application, it does not follow that the required information was absent. Also, the Chatham Park Master Plan discusses in detail the items alleged to be absent. Therefore, the trial court did not err in dismissing this claim because it is not one upon which any relief can be granted.
D. Claims 6 & 7
Plaintiffs' sixth and seventh claims for relief both allege that the Chatham Park Master Plan and the Chatham Park PDD Ordinance are impermissibly vague and fail to establish sufficiently detailed rules and regulations for development in Chatham Park. Claim six alleges that the Master Plan creates uncertainty and vagueness regarding boundary and stream buffers, and types, intensities, and density of use allowed in the Chatham Park PDD. Claim seven alleges that the Chatham Park PDD regulations and the Master Plan are so vague as to be unenforceable, but claim seven is vague as to what about these regulations and plan are unclear. Claim six seems to allege that because the regulations and plan are so vague, they are unreasonable, arbitrary and capricious, and therefore should be declared null and void.
However,
statutory language must of necessity be somewhat general because of the impossibility of describing in minute detail each and every situation or circumstance that the statute or ordinance must encompass. An ordinance or statute must be considered as a whole, and its language should not be isolated in order to find fault with its descriptive character when the general sense and meaning of the statute can be determined from reading such language in proper context and giving the words ordinary meaning. See Woodhouse v. Board of Commissioners , 299 N.C. 211, 225-26, 261 S.E.2d 882, 891 (1980) ; State v. Fox , 262 N.C. 193, 136 S.E.2d 761 (1964). Statutory language should not be declared void for vagueness unless it is not susceptible to reasonable understanding and interpretation. Hobbs v. Moore County , 267 N.C. 665, 149 S.E.2d 1 (1966).
State v. Jones , 305 N.C. 520, 531, 290 S.E.2d 675, 681 (1982). The language of the Master Plan and the PDD Ordinance, because they both anticipate future refinement and regulatory approval as the development progresses, are susceptible to reasonable understanding and interpretation. They both contain specific requirements for the development of Chatham Park. When considered as a whole, neither the Master Plan, nor the PDD Ordinance, is so vague that it should be overturned by this Court.
As for the seventh claim that because the Master Plan and PPD Ordinance are so vague they are unreasonable, arbitrary and capricious, our holding above that they are not impermissibly vague negates this claim, especially because the arbitrary and capricious "standard is a very difficult standard to meet." Summers v. City of Charlotte , 149 N.C. App. 509, 518, 562 S.E.2d 18, 25 (2002) (citation and quotation marks omitted). "A decision is arbitrary and capricious if it was 'patently in bad faith,' 'whimsical,' or if it lacked fair and careful consideration." Id. Plaintiffs have not alleged any bad faith or that the decisions of the Town Board of Commissioners were whimsical or lacked fair and careful consideration. Therefore, the Master Plan and PPD Ordinance were not unreasonable, arbitrary, or capricious.
Conclusion
For the reasons set out above, the trial court did not err in dismissing Plaintiffs' third through eighth claims for relief. Plaintiffs' appeal from the trial court's dismissal of the first and second claims is dismissed as abandoned.
AFFIRMED IN PART; DISMISSED IN PART.
Report per Rule 30(e).
Judges DAVIS and INMAN concur.

Plaintiff Greg Ogle filed notice of voluntary dismissal of his claims pursuant to Rule 41(a) of the North Carolina Rules of Civil Procedure on 19 October 2015 and is not a party to the present appeal.

Based on the Town's adoption of the Second Rezoning Ordinance and Revised Master Plan in December 2014, in January 2015, defendant Town and intervenor CPI moved to dismiss the First Lawsuit as moot. On 25 March 2015, Superior Court Judge Michael R. Morgan granted the Town and intervenor CPI's motion and entered an order dismissing plaintiffs' First Lawsuit without prejudice.

The trial court concluded that "there exists a factual dispute that must be resolved prior to the court determining whether Pittsboro Matters, Inc., has members or not, and hence, whether the Court has subject matter jurisdiction." However, the trial court did not endeavor to resolve the factual dispute because it dismissed the claims by Pittsboro Matters on other grounds.

The ninth claim challenges the Third Rezoning Ordinance and the Chatham Park Master Plan and requests that they be declared null and void because they violate Plaintiffs' equal protection and substantive due process rights. The tenth claim challenges all of the actions of the Town regarding the development of Chatham Park and requests that they be declared null and void because they violate 42 U.S.C. § 1983. Because Plaintiffs do not argue that the trial court erred in dismissing these claims, any assignment of error regarding the dismissal of these claims is deemed abandoned. N.C.R. App. P. 28(b)(6).